**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Maxine FORREST, Defendant-Appellant.**

**No. 79–5335.**

United States Court of Appeals, Fifth Circuit. Unit B

March 16, 1981.

Marc Cooper, Sharon L. Wolfe, Miami, Fla., for defendant-appellant.

Nicholas P. Geeker, U. S. Atty., Pensacola, Fla., Donald S. Modesitt, Kenneth W. Sukhia, Asst. U. S. Attys., Tallahassee, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and TJOFLAT and VANCE, Circuit Judges.

VANCE, Circuit Judge:

This is an appeal from a conviction of perjury. 18 U.S.C. § 1621. Appellant Maxine Forrest, along with her husband, William Henry Forrest, was first convicted in federal district court of knowingly buying, receiving and possessing a tractor-trailer

rig and its contents, a load of eggs. On appeal, this court reversed Maxine Forrest's conviction because the evidence was not sufficient to establish that she knew the goods were stolen. *See United States v. Forrest,* 620 F.2d 446, 449–51 (5th Cir. 1980). Prior to this court's ruling, the government instituted the present case charging that appellant had perjured herself during her first trial.

The indictment charged that Forrest lied in denying telephone conversations between herself and one Ralph Parris on June 19, 1978 about his purchase of some of the stolen eggs.[1] At the perjury trial, Parris testified that he was first contacted about the stolen eggs by William Forrest on June 19. He stated that he later made three telephone calls to Maxine Forrest during which he told her that he would take thirty cases of eggs and would pay for them partly by check and partly in cash. He testified that he received the eggs and paid for them in the manner agreed upon.

To corroborate Parris' testimony, the government called Edwin Hodge and David Coker. Hodge was an employee of Forrest Mobile Homes. He testified that on or about June 19 he unloaded some of the stolen eggs onto a pickup truck at Maxine Forrest's direction. He stated that he made three deliveries of the stolen eggs but was not involved in the delivery of any eggs to Parris whom he did not know. The money he received was returned to Maxine Forrest at the order of William Forrest who had

1. The jury was instructed that Maxine Forrest was charged with having perjured herself during the following testimony concerning her phone calls with Parris:

Q Let's talk about June of 1978. Do you know what he owned then?

A Taco Tex. We go by and visit him quite a bit. We're all friends.

Q Right. Now, did you telephone him on Monday morning, June the 19th of 1978, and tell him that you had a surplus of eggs?

A No, sir, I did not.

Q You unequivocally say absolutely not?

A No, sir, I did not.

Q It's not a question of you not remembering or something of that nature?

A Well, I do not remember calling Mr. Parris on Monday. No, I do not remember that.

Q Now, wait a minute. Now you're saying you don't remember or are you saying it did not happen?

A I did not, that I remember.

Q Are you telling me you might have called him about some eggs that you had?

A No, I did not call Mr. Parris on Monday. No, sir.

Q I want to be sure about this.

A Yes, sir.

Q I want you to either say yes or no, if you can, or you don't remember.

A I don't remember.

Q So you might have called him about some surplus eggs?

A No, sir, I would not have called him about surplus eggs but I might have talked to Mr. Parris Monday morning. But, no, sir, I have not called him about no eggs.

Q You're aware of the perjury charges, that they might be brought against you if you lied and it's proven? You understand that?

A Yes, sir.

Q All right. I want to pin you down on this one question and I want an answer and I want you to tell me an answer that you can stick by in good conscience. I want to know, and I'm going to ask it as plain as I can, if you called Ralph Parris on Monday morning, June 19 of 1978, and told him that you had a surplus of eggs.

A No, sir, I did not call Mr. Parris on Monday morning and tell him that I had no surplus of eggs.

Q All right. Thank you. Did Mr. Parris inform you that the deal sounded suspicious to him and that he informed you of that?

A Mr. Parris has not informed me anything, because I haven't called Mr. Parris about no eggs.

Q Did you tell Mr. Parris that the deal was perfectly legitimate?

A I have not talked with Mr. Parris about any eggs.

Q Did Mr. Parris tell you he would take thirty cases of eggs?

A I have not talked with Mr. Parris about any eggs. I mean, he's a friend of mine, him and his wife, but I have not discussed any eggs with Mr. Ralph Parris, no, sir.

Q Did Mr. Parris make a call, a return call, to you on the same day and ask you how you desired payment?

A No, sir.

Q Did you tell Mr. Parris that he was to pay the two men who made the delivery in cash, that they would bring the cash to you?

A No sir.

Another count of the indictment charged Mrs. Forrest with perjury in denying that she had ordered "two male individuals to deliver thirty cases of eggs to Mr. Parris." The trial court dismissed this count since no testimony whatever was received on this matter.

left town the previous day to go to Denver. According to Hodge, Mrs. Forrest was running the business in her husband's absence. He testified that he thought she was making the contacts with purchasers, but stated that he didn't know anything about anyone ordering eggs or about any conversations with Parris about eggs. When questioned by purchasers about the origin of the eggs, he gave them a story he had been instructed to offer them by William Forrest.

David Coker testified that he had worked for William Forrest and had been involved in the delivery of three loads of the stolen eggs. The first load had been delivered at William Forrest's direct order. The second and third loads, which included the delivery to Parris, were apparently made at Hodge's direction. Parris paid Coker for the eggs partly in cash and partly by check. Coker somewhat uncertainly recalled giving the money he received to the Forrests' son who assisted him in his deliveries.

Appellant raises several grounds of error including questions of double jeopardy. Because we find that the government failed to meet its burden under the so-called "two-witness" rule, we address only this contention.

■ It is well established that "to authorize a conviction for perjury the falsity of the statement alleged to have been made by the defendant must be established either by the testimony of two independent witnesses, or by one witness and independent corroborating evidence which is inconsistent with the innocence of the accused." *McWhorter v. United States*, 193 F.2d 982, 983 (5th Cir. 1952). As the Supreme Court stated in *Weiler v. United States*, 323 U.S. 606, 609, 65 S.Ct. 548, 550, 89 L.Ed. 495 (1945), "[I]mplicit in [the] evolution and continued vitality [of the two-witness requirement] has been the fear that innocent witnesses might be unduly harassed or convicted in perjury prosecutions if a less stringent rule were adopted."

No detailed rule has been laid down describing the precise nature of the corroboration required by the rule. 7 J. Wigmore, *Evidence* § 2042 at 365 (rev. ed. J. Chad-

bourn 1978). *See generally* Annot. 49 A.L.R. Fed. 185 (1980). This circuit, however, has defined its requirements to some extent. The corroborating evidence must be "inconsistent with the innocence of the accused," *Cuesta v. United States*, 230 F.2d 704, 707 (5th Cir. 1956) (quoting *McWhorter, supra*, 193 F.2d at 983) and we have noted that the evidence must be "of a quality to assure that a guilty verdict is solidly founded." *United States v. Forrest*, 623 F.2d 1107, 1111 (5th Cir. 1980) (quoting *United States v. Maultasch*, 596 F.2d 19, 25 n.9 (2d Cir. 1979)). Our fullest statement of the evidence required by the two-witness rule is found in *Paternostro v. United States*, 311 F.2d 298 (5th Cir. 1962). There, we noted that "the corroborating evidence need not be sufficient to establish independent commission of the crime charged beyond a reasonable doubt or even by a preponderance of the evidence." *Id.* at 307. We went on, however, to stress that the corroborating evidence must be independent:

> To sustain a conviction for perjury the evidence must be strong, clear, convincing and direct. Where the government seeks to establish perjury by the testimony of one witness and corroborating evidence, the latter must be independent of the former and inconsistent with the innocence of the defendant. "When the courts speak of corroborative evidence they mean *evidence aliunde*—evidence which tends to show the perjury independently."

*Id.* at 308–09 (quoting *United States v. Neff*, 212 F.2d 297, 306–07 (3d Cir. 1954)).

Our cases thus make clear that the corroborative evidence must be inconsistent with the innocence of the accused and must tend to show the perjury independently of the testimony which it is intended to corroborate.

■ The evidence by the government fails to meet these requirements. The testimony indicates that Maxine Forrest took an active role in running her husband's business in his absence, that she ordered the loading of eggs, that she received payment

for some of the deliveries, and that Parris received and paid for the eggs in the manner he allegedly discussed with her. While the corroborative evidence is not inconsistent with the hypothesis of Forrest's guilt, it is in no way whatsoever inconsistent with the hypothesis that she never discussed eggs with Parris.

The gaps in the evidence are glaring. Neither Hodge nor Coker testified that Maxine Forrest ordered the delivery of eggs to Parris. Indeed, neither witness indicated that she ever gave them any name or address to which to deliver eggs. On the other hand, Coker testified that at least one of his deliveries was made at the direct order of William Forrest who also spoke to Hodge on the phone from Denver. Hodge brought the money he received for deliveries to Maxine Forrest not at her orders but at the orders of her husband. Similarly, William Forrest prepared him with a story to give customers if asked about the origin of the eggs. Although Hodge thought Mrs. Forrest was "making contacts," he stated that he knew nothing about any orders of eggs and was not involved in any delivery to Parris. Coker, who actually delivered the eggs to Parris, never testified to any conversations with Maxine Forrest at all. Nor did he return the money he received for the delivery to her. He appears to have taken orders exclusively from William Forrest and Hodge.

While the facts of each perjury case must be considered individually, other decisions in this area shed light on the requirements of corroborative evidence. In *Paternostro v. United States, supra,* defendant, a policeman, was convicted of perjuring himself when he testified that he neither knew of nor had participated in a graft system. One witness testified directly that defendant had participated in the system. One other witness testified that he had received graft money in envelopes similar to those described by the first witness. The evi-

dence that the graft system existed was found not to be sufficient to corroborate the chief witness' claim that the defendant knew of it personally.[2] A comparison with the present case reveals parallel problems with the nature of the corroborative evidence. While the testimony of Hodge and Coker establishes that Parris received and paid for stolen eggs and that Mrs. Forrest was aware of some egg deliveries, it fails to indicate that she personally arranged the delivery of eggs to Parris.

The facts of *United States v. Freedman,* 445 F.2d 1220 (2d Cir. 1971) are also illustrative. In *Freedman,* the defendant had been convicted of perjuring himself in testifying to the SEC that with one exception he had had no profit-sharing arrangements with any customer. Another customer testified to contradict this statement. As corroboration, the government introduced the check given by the witness to the defendant's family concerning which he had testified. In reversing the conviction the court stated: "The crucial concern, that of an explanation of the transaction underlying the giving of the check, is not independently explained by proving the check's existence and its negotiation. Absent [the customer's] definition of the deal, it is devoid in and of itself of any persuasiveness as to why it was given." 445 F.2d at 1226. In the present case, the thrust of the corroborative evidence was that Parris had received the eggs and paid for them. Absent Parris' own explanation of the delivery, the corroborative evidence is similarly devoid of any persuasiveness as to his discussion of the deal with Maxine Forrest.

After carefully considering the evidence, we conclude that the testimony offered to corroborate Parris' statements is not inconsistent with Forrest's denial of telephone conversations and does not tend to show her perjury independently. We reverse and remand for entry of judgment of acquittal.

REVERSED and REMANDED.

2. The same count of the indictment charged defendant with having perjured himself on a related matter when he testified that he had not solicited money from an operator of an illegal business. Although one witness testified that defendant had solicited money from her, the testimony of a second witness as to solicitation was found to be insufficient corroboration since she was unable to identify the defendant.