480 A.2d 1229

**COMMONWEALTH of Pennsylvania**

v.

**Alonzo ROBINSON, Appellant.**

Superior Court of Pennsylvania.

Submitted April 30, 1984.

Filed Aug. 10, 1984.

148

Stanley P. Stern, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and WIEAND and CIRILLO, JJ.

WIEAND, Judge:

In a trial for perjury, may the Commonwealth rely solely on documentary evidence to show the falsity of testimony given by the defendant in prior judicial proceedings? This is the first and more difficult issue raised by the appellant in this appeal from a judgment of sentence imposed for perjury. The second issue is whether appellant was deprived of a fair trial because the jury was able to discern from the Commonwealth's evidence that appellant's false testimony had been given during a bail hearing in a prior criminal proceeding. For reasons which follow, we affirm the judgment of sentence.

On May 29, 1981, appellant appeared before the Honorable Alex Bonavitacola for a bail revocation hearing after appellant had been arrested on a bench warrant. Appellant testified that he had not been present for a hearing on October 14, 1980 because he was then incarcerated in prison in Onondaga County, New York. He testified also that he had been unable to appear for a hearing on March 31, 1978 because he was then a patient at the Medical College of Pennsylvania. Finally, he testified that at the time of his arrest on the bench warrant he was an employee of Budd Company, having worked at its plant at Red Lion and Verree Roads for a period of four years. The Commonwealth charged that appellant's testimony was false and perjurious. At trial before a jury, the statements made by appellant under oath were proved by Judge Bonavitacola

and by the court stenographer who had recorded appellant's testimony. In order to show the falsity of appellant's testimony, the Commonwealth relied upon the records of the prison, the hospital and the Budd Company. After they had been duly proved by the custodians thereof, the prison and hospital records were received in evidence. They showed that appellant had not been a prisoner in the Onondaga County Prison or a patient in the Medical College of Pennsylvania on the dates when he was required to be in court. The Budd Company's employment records were also produced and showed that appellant had not been one of its employees.[1]

■ Perjury, being a false statement under oath or affirmation in an official proceeding, is defined and made a felony of the third degree by the provisions of 18 Pa.C.S. § 4902. Subsection (f) thereof provides:

In any prosecution under this section, except under subsection (e) of this section,[2] falsity of a statement may not be established by the uncorroborated testimony of a single witness.

(footnote added). This subsection, it will be observed, does not purport to establish affirmatively the type or quality of the evidence necessary to convict. It seeks merely to prevent a conviction in a situation where oath has been pitted against oath. Thus, it establishes that a conviction for perjury cannot rest upon the "uncorroborated testimony of a single witness." The rule has value in safeguarding witnesses in official proceedings from harassment by disappointed litigants. It also protects them from their own or another's good-faith mistakes. *Commonwealth v. Katsafanas*, 318 Pa.Super. 143, 166, 464 A.2d 1270, 1283 (1983).

■ The provisions of 18 Pa.C.S. § 4902(e), it has been held, do not prevent a conviction based on circumstantial evidence. *Commonwealth v. Broughton*, 257 Pa.Super.

1. Although these records were produced by the Commonwealth and were referred to during trial, they were not offered into evidence.

2. Subsection (e) pertains to inconsistent statements made under oath.

369, 390 A.2d 1282 (1978) (rehearing denied). Similarly, the language of the subsection does not preclude a conviction where the only proof of falsity is documentary evidence. Thus, an uncorroborated record of a criminal conviction is sufficient to demonstrate the falsity of a sworn statement that the speaker has never been convicted of a crime. S. Toll, *Pennsylvania Crimes Code Annotated* § 4902(f) (1974). See also: *United States v. Flores—Rodriguez,* 237 F.2d 405, 408 (2d Cir.1956); *Holy v. United States,* 278 F. 521 (7th Cir.1921). The documentary evidence, however, must be clear and positive. 70 C.J.S. *Perjury* § 60 (1951).

■ A careful review of the documentary evidence in this case reveals clear and positive proof that appellant testified falsely in the proceedings before Judge Bonavitacola. When appellant appeared at his bail revocation hearing, he testified that he had been incarcerated in the Onondaga County Prison by virtue of an 89 day sentence following a motor vehicle offense. He was asked, "How many days were you in jail from the time of your arrest until the time of your release?" Appellant answered: "I was arrested on the 12th of October and I was released on the 3rd of November." Sgt. Frederick Carlton, the supervisor of record keeping at the prison, testified that he had searched the various records of the prison and that no one by the name of Alonzo Robinson had been a prisoner during the year 1980. The evidence showed, however, that Robinson had also used aliases and was known in October, 1980, as Allen Johns. This name did appear on the records of the prison. It appeared separately on the prison intake records, the prison status sheets, the prison clothing records, and the prison discharge records. These records demonstrated uniformly and unequivocally that a person using the name Allen Johns had been incarcerated on September 28, 1980 and had been released the same day upon payment of a fine. Appellant's girlfriend, called as a defense witness, testified that she had seen appellant in Philadelphia on September 29, 1980, the following day.

Appellant also testified at the bail hearing that on March 31, 1978, the date of a scheduled hearing, he had been a

patient in the Medical College of Pennsylvania. He said that as a patient he had used the name Alonzo Robinson and not the alias, "James Dunbar," which he was also known to use. At trial, Mrs. Myra Sarubin, the director of the medical records department of the hospital, produced admission and emergency room logs, which were authenticated and received in evidence. Mrs. Sarubin testified that she had also examined the computerized master patient file. All disclosed that no one by the name of Alonzo Robinson had been treated at the hospital on March 31, 1978. In response to cross-examination by appellant's counsel regarding medical records for James Dunbar, the witness produced records and read from them. They showed that a man using the name "James Dunbar" had been admitted to the hospital on September 15, 1979 for treatment of a cervical fracture. He had been discharged on September 28, 1979.

With respect to his employment, appellant testified at the bail hearing that he was employed as Alonzo Robinson, badge number 51784, social security number 166–42–4585. Appellant's evidence at trial showed that the only aliases which he had used were "Allen Johns," "James Dunbar," "James Taylor" and "Mustafa Mohammed." The employment records of the Budd Company were produced by the company's personnel manager. They disclosed that the badge number 51784 had not been issued to any employee and that no person using the social security number previously testified to by appellant had ever been employed by the Budd Company. The company's records also disclosed that no one using the names "Alonzo Robinson," "Allen Johns," or "James Dunbar" had been employed by the company within a ten year period. The same employment records contained references to five persons who had used the name "James Taylor." Only two, however, had been of the same race as appellant. One had been terminated in 1971, and the other had failed to appear for work after he had been hired. Photographs of these two men were produced and shown to the members of the jury so that they could see for themselves that appellant was not one of

them. Finally, counsel stipulated, so that the personnel manager would not have to be called back in rebuttal, that according to the company's records the only person with the surname "Mohammed" employed by Budd Company was Wali Q. Mohammed, who lived in Camden, New Jersey, and who had a different badge number than that stated by appellant to have been issued to him.

This evidence was far more substantial than the uncorroborated testimony of a single witness. It was positive and convincing. It was sufficient to sustain appellant's conviction on three counts of perjury. Additional testimony from other witnesses would do little, if anything, to enhance the veracity of the documentary evidence relied upon by the Commonwealth to prove that appellant had testified falsely.

■ Evidence imputing prior criminal conduct "is admissible where 'such prior conviction or criminal act formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts.' " *Commonwealth v. Brown*, 462 Pa. 578, 591, 342 A.2d 84, 90 (1975), quoting *Commonwealth v. Williams*, 307 Pa. 134, 148, 160 A. 602, 607 (1932); *Commonwealth v. Stufflet*, 276 Pa.Super. 120, 125, 419 A.2d 124, 127 (1980). In order to prove the charge of perjury against the appellant, the Commonwealth had to prove, *inter alia*, that the appellant made a false statement under oath or affirmation, in an official proceeding. 18 Pa.C.S. § 4902(a). In establishing the elements of this offense, the Commonwealth could properly demonstrate that the appellant had appeared before the Honorable Alex Bonavitacola for a bail revocation hearing. The only cases mentioned at trial were those involved in the prior bail hearing. This reference to prior criminal charges was necessary to complete the picture of the bail hearing at which the perjury had occurred. It was not offered to prove a general criminal disposition. Moreover, the Commonwealth did not attempt to establish the details of the other cases, and the trial judge, in his jury instructions, told the jury not to consider evidence of other criminal charges for purposes of showing general criminal tendencies.

■ The admission and exclusion of evidence is a matter within the sound discretion of the trial judge, and reversal is inappropriate absent an abuse of that discretion. *Commonwealth v. Miller,* 303 Pa.Super. 504, 510, 450 A.2d 40, 43 (1982). In view of the legitimate purpose for which this evidence was admitted and the court's cautionary instruction, we find no abuse of discretion by the trial judge. See: *Commonwealth v. Miller, supra* (in a trial for resisting arrest, evidence of other crimes was admissible to demonstrate the circumstances surrounding the arrest and to place the offense charged in context); *Commonwealth v. Markle,* 245 Pa.Super. 108, 369 A.2d 317 (1976) (in trial on charge of escape, the jury has a right to know the reason for the defendant's incarceration). Compare: *Commonwealth v. Lee,* 297 Pa.Super. 216, 443 A.2d 804 (1982) (reference to appellant's arrest on an unrelated charge was not necessary to complete the picture of a robbery which had occurred 20 days earlier).

The judgment of sentence is affirmed.

SPAETH, President Judge, concurred in the result.