STATE OF CONNECTICUT *v.* ELSIE SANCHEZ
(12690)

PETERS, C. J., HEALEY, CALLAHAN, BORDEN and FRACASSE, Js.

Argued April 2—decision released July 21, 1987

*Laura A. Ingersoll,* certified legal intern, with whom were *Todd D. Fernow* and, on the brief, *Michael R. Sheldon* and *Thomas G. Merrill,* certified legal intern, for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, and *James G. Clark,* assistant state's attorney, with whom, on the brief, was *Peter Ponziani,* deputy assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. On November 11, 1984, the defendant, Elsie Sanchez, was convicted by a jury of the crime of perjury in violation of General Statutes § 53a-156 (a).[1] The defendant appeals from the judgment of conviction claiming that the trial court erred in: (1) denying her motion for judgment of acquittal; (2) directing the jury to find that the statements made in the prior judicial proceeding were material; and (3) instructing the jury that it could infer the existence of disputed elements of the charged offense by a preponderance of the evidence. The defendant also claims that

---

[1] General Statutes § 53a-156 (a) provides: "PERJURY: CLASS D FELONY. (a) A person is guilty of perjury if, in any official proceeding, he intentionally, under oath, makes a false statement, swears, affirms or testifies falsely, to a material statement which he does not believe to be true."

she was deprived of her right to a fair trial when the assistant state's attorney was allowed to prosecute her for perjury after he had tried the case in which she allegedly committed the charged offense.

The perjury charge arose from the defendant's alibi testimony in the prior trial of her boyfriend, Marcos DeJesus.[2] DeJesus had been charged with the crimes of burglary in the first degree, assault in the second degree and larceny in the second degree in connection with an incident which occurred on May 22, 1982. At DeJesus' trial, the defendant testified that at approximately 2 p.m. on May 22, 1982, she and DeJesus had left East Hartford to drive to her godmother's home in Norwood, Massachusetts, to pick up the defendant's daughter, Angelica Haley. She testified that they had left Norwood at 10:30 that night and had returned home about 1:30 a.m. The defendant testified that she was sure they had been in Massachusetts on that date because she had taken her daughter out of school May 17 through May 21 and had dropped her off in Norwood on May 16. She testified that she had taken Angelica out of school and had taken her to Norwood "because she [had been] giving [the defendant] trouble in school." The jury found DeJesus not guilty and judgment was rendered accordingly.

In support of its claim that the defendant testified falsely at the DeJesus trial, the state presented three sets of school attendance records tending to show that, during the week of May 17–21, 1982, Angelica had been

[2] At trial, the state, after an offer of proof in the absence of the jury, introduced the relevant portions of the tape and transcript of the defendant's testimony at the DeJesus trial. The defendant objected to admitting any of the tape on the grounds that it violated her fifth amendment rights. The trial court ruled "that so much of the tape that pertains to why this defendant went to Massachusetts, when she went to Massachusetts regarding the party and matters of that type may be admitted." The defense counsel then suggested that he and the state's attorney go over the transcript and stipulate to the appropriate pages.

recorded as having been absent only on May 18. The records were presented through Hope Labet, Angelica's 1981–82 school year homeroom teacher, and Devon Delk, former supervisor of pupil accounting for the East Hartford board of education. From this testimony, the jury could reasonably have found the following: Attendance of the sixteen to eighteen fourth graders was taken each morning at 8:15 and transcribed on daily attendance sheets. If a child was absent, his or her name was recorded on the daily attendance sheet. These sheets were sent to the office each morning between 8:18 and 8:20. When a child was tardy, he or she had to go to the office and obtain a classroom pass. If that child had been marked absent on the daily attendance sheet, a single line was drawn through his name and a "T" for tardy was marked next to it by either the teacher, if he or she had the sheet, or by the office. Each day, the teacher copied each student's statistics from the daily attendance sheets onto white cards which, in turn, were used at the end of each marking period to prepare the student's report card attendance summary.

The daily attendance sheets for the 1981–82 school year showed that during the week of May 17–22, 1982, Angelica had been absent only on May 18, 1982.[3] The daily sheets showed that during the entire month of May, Angelica had been absent four times and tardy twice. The white card also showed that during the month of May, Angelica had been absent four times[4]

---

[3] Angelica's name appeared on the May 18, 1982 sheet as absent and next to it appeared the notation: "If Mrs. Sanchez [does not] call, please call her . . . . " Labet testified that the notation had been written in response to a request from the defendant that if Angelica is not in school and the defendant does not call, then the school should call her.

[4] Labet examined each daily sheet for May in order to total the number of times Angelica had been absent. Initially, at the trial, she counted five absences, but immediately corrected the number to four.

and tardy twice. Angelica's June, 1982 report card, however, showed that she had been absent three times and tardy three times.

Labet explained that the discrepancy was the result of an error in transposing the figures to the report card. She testified that the daily sheets were accurate and that it is not likely that she had made an error on the daily sheets or white card "because those are the original things that I would write every day and [the report card] is something I copied over from a white sheet and I'm copying seventeen, eighteen per marking period."[5]

Angelica Haley was the only witness to testify for the defense. She testified, inter alia: that during the week in question she had been in Norwood with her mother's godmother; that she had been sent there as punishment for playing hooky from school; and that her mother and DeJesus had picked her up and had taken her home. Angelica also testified that she could not remember how many times she had been absent during April, May or June in the sixth grade or how many times she had been absent during the total year of sixth, fifth or fourth grade.

I

The defendant's first claim of error is that the trial court erred in failing to grant each of her motions for judgment of acquittal on the ground that the state had failed to prove a prima facie case of falsity.[6]

In support of this claim of error, the defendant, pointing to the common law "two witness rule," argues that

[5] At the close of the state's case, the defendant moved to strike Labet's testimony as not credible. The trial court denied the motion.

[6] On November 13, 1983, before commencement of the trial, the defendant asked for a judgment of acquittal on the ground that the state could not establish a prima facie case. The trial court denied the motion as premature. At the close of the state's case, the defendant again moved for a judgment of acquittal. The trial court denied the motion.

in order to support a charge of perjury, the prosecution must provide at least two independent sources of evidence as to the falsity of the allegedly perjured statement. The defendant maintains that in this case the state offered only a single set of attendance records to establish falsity and that this evidence falls short of the requisite degree of proof necessary to support a conviction of perjury. The defendant argues that one piece of uncorroborated documentary evidence is not enough to sustain a conviction for perjury.

Simply stated, the two witness rule is a quantitative rule of evidence which provides that a person may not be convicted of perjury upon the testimony of a single witness as to the falsity of the statement made. 7 J. Wigmore, Evidence (Chadbourn Rev.) § 2040; note, "Perjury and the Quantitative Evidence Rule," 36 Mo. L. Rev. 544 (1971). Originally, the rule required that in order to sustain a conviction for perjury, the falsity of the defendant's oath had to have been proven by the sworn testimony of two or more live witnesses. Over the years, however, the rule has been modified to permit a conviction upon the sworn testimony of one live witness if that testimony is supported by proof of corroborative circumstances, the so-called "one-witness-plus-corroboration" rule. *State* v. *Campbell,* 93 Conn. 3, 12, 104 A.2d 653 (1918); see 2 F. Wharton, Criminal Evidence (13th Ed. Torcia) § 488. It has been said that "[t]he rule of evidence in perjury cases presents an almost unique exception to the general rule that evidence which is sufficient to convince the jury of the defendant's guilt beyond a reasonable doubt is sufficient to sustain a conviction." *United States* v. *Palese,* 133 F.2d 600, 602 (3d Cir. 1943). This "special rule" is "deeply rooted in past centuries." *Weiler* v. *United States,* 323 U.S. 606, 608–609, 65 S. Ct. 548, 89 L. Ed. 495 (1945). The drafters of the Model Penal Code explain this evidentiary requirement as "a special gloss

on 'reasonable doubt.' " Model Penal Code § 241.1, p. 141 (1980). The two witness rule is contrary to the principle followed in our justice system that the "ultimate measure of testimonial worth is quality and not quantity." *Weiler* v. *United States,* supra, 608.[7]

It has been said that "[t]he rule has value in safeguarding witnesses in official proceedings from harassment by disappointed litigants. It also protects them from their own or another's good-faith mistakes." *Commonwealth* v. *Robinson,* 332 Pa. Super. 147, 150, 480 A.2d 1229 (1984); see *United States* v. *Nessanbaum,* 205 F.2d 93, 95 (3d Cir. 1953). " 'The ground of the rule is a suspicion of fraud.' " *United States* v. *Wood,* 39 U.S. 430, 443, 10 L. Ed. 527 (1840). In affirming the viability of the rule, Justice Hugo Black stated: "[I]mplicit in its evolution and continued vitality has been the fear that innocent witnesses might be unduly harassed or convicted in perjury prosecutions if a less stringent rule were adopted. Whether it logically fits into our testimonial pattern or not, the government has not advanced sufficiently cogent reasons to cause us to reject the rule." *Weiler* v. *United States,* supra, 609. The Second Circuit Court of Appeals has stated: "The purpose of the rule [is] to prevent ill-founded retaliatory attack by perjury prosecution upon a witness on no more than the contrary oath of another." *United States* v. *Collins,* 272 F.2d 650, 652 (2d Cir. 1959), cert. denied, 362 U.S. 911, 80 S. Ct. 681, 4 L. Ed. 2d 619, reh. denied, 362 U.S. 957, 80 S. Ct. 859, 4 L. Ed. 2d 874 (1960).

Unlike perjury statutes in other states that have either expressly rejected or adopted the common law

---

[7] We must note that this rule had been subject to much criticism. See, e.g., *Cohen* v. *United States,* 27 F.2d 713 (2d Cir. 1928); *Hourie* v. *State,* 452 A.2d 440 (Md. App. 1982); *State* v. *Storey,* 148 Minn. 398, 402–403, 182 N.W. 613 (1921); 7 J. Wigmore, Evidence (Chadbourn Rev.) § 2043; see also *United States* v. *Collins,* 272 F.2d 650, 652 (2d Cir. 1959).

two witness rule; see, e.g., *State* v. *Farrington,* 411 A.2d 396, 401 (Me. 1980); *State* v. *Storey,* 148 Minn. 398, 182 N.W. 613 (1921); our perjury statute, § 53a-156, does not by its terms require a particular quantum of evidence as to falsity in order to support a conviction under that statute. In fact, the legislature in promulgating § 53a-156 was silent on the question of whether the one-witness-plus-corroboration rule would remain the law of this state after the effective date of § 53a-156. We have said on other occasions, however, that " '[n]o statute is to be construed as altering the common law, farther than its words import [and that a statute] is not to be construed as making any innovation upon the common law which it does not fairly express.' *Shaw* v. *Railroad Co.,* 101 U.S. 557, 565, 25 L. Ed. 892 [1879]." *Dennis* v. *Shaw,* 137 Conn. 450, 452, 78 A.2d 691 (1951); *Stolberg* v. *Caldwell,* 175 Conn. 586, 607, 402 A.2d 763 (1978); 2A J. Sutherland, Statutory Construction (Sands 4th Ed.) § 50.05. Furthermore, there is no evidence in the legislative history or our subsequent construction of § 53a-156 that the statute is anything but a direct codification of the common law crime of perjury. The most reasonable construction of that statute, therefore, is that the legislature intended to carry forward the common law one-witness-plus-corroboration rule into § 53a-156.

While the state does not dispute that the one-witness-plus-corroboration rule remains part of our jurisprudence, it does argue that the defendant's claim is without merit because the one-witness-plus-corroboration rule does not apply to cases in which the state relies on documentary evidence to establish falsity. The state maintains that the rule is limited to situations in which the state relies solely on the live testimony of a single witness to prove falsity. The issue before this court, therefore, is the quantum of the evidence of falsity necessary to sustain a conviction of the crime of per-

jury in violation of § 53a-156 in cases where the state relies solely on documentary evidence to establish falsity.

Although the case law is not always consistent; see 88 A.L.R.2d 847; courts have held that the one-witness-plus-corroboration rule does not prevent a conviction based on circumstantial evidence alone. See, e.g., *Boney* v. *United States,* 396 A.2d 984 (D.C. App. 1979); *Brown* v. *State,* 225 Md. 610, 171 A.2d 456 (1961), and cases cited therein. Similarly, some courts have held that the rule does not preclude a conviction where the only proof of falsity is documentary evidence. *United States* v. *Wood,* supra, 444; *United States* v. *Collins,* supra; *United States* v. *Flores-Rodrigues,* 237 F.2d 405 (2d Cir. 1956); *People* v. *Fueston,* 717 P.2d 978 (Colo. App. 1985); *Commonwealth* v. *Robinson,* supra; but cf. *People* v. *Di Giacomo,* 193 Cal. App. 2d 688, 14 Cal. Rptr. 574 (1961). Some courts have held that the state is not obligated to present live testimony. See, e.g., *United States* v. *Wood,* supra, 440; *United States* v. *Spaeth,* 152 F. Sup. 216 (N.D. Ohio 1957), aff'd, 254 F.2d 924 (6th Cir. 1958), cert. denied, 358 U.S. 831, 79 S. Ct. 52, 3 L. Ed. 2d 69 (1958); comment, "Proof of Perjury: The Two Witness Requirement," 35 S. Cal. L. Rev. 86, 92 (1961).

When documentary evidence is substituted for the testimony of a live witness, however, that evidence must be of a highly reliable order and the necessity for corroboration is not eliminated. 70 C.J.S. §§ 60, 68, citing *Hammer* v. *United States,* 271 U.S. 620, 626, 46 S. Ct. 603, 70 L. Ed. 1118 (1926); *United States* v. *Nessanbaum,* supra; *United States* v. *Palese,* supra; see *United States* v. *Bergman,* 354 F.2d 931, 934 (2d Cir. 1966); *United States* v. *Collins,* supra.[8] The corrobora-

---

[8] This concept has been articulated by different courts in various ways: "*Brightman* v. *United States,* 386 F.2d 695, 697 (1st Cir. 1967) ('the corroboration must be of a substantial nature . . . . "It is sufficient if the

tion requirement is satisfied only with evidence that is independent of the principal evidence which it corroborates. " 'When the courts speak of corroborative evidence they mean *evidence aliunde*—evidence which tends to show perjury independently.' " *United States v. Neff,* 212 F.2d 297, 307 (3d Cir. 1954); *United States v. Forrest,* 639 F.2d 1224, 1226 (5th Cir. 1981); *United*

corroborating evidence *tends* to establish the defendant's guilt, and if such evidence *together with* the direct evidence is inconsistent with the innocence of the defendant." ' [emphasis original; citation omitted]). *United States v. Collins,* 272 F.2d 650, 652 (2d Cir. 1959), cert. denied, 362 U.S. 911 [805 S. Ct. 681, 4 L. Ed. 2d 619] (1960) ('The test should be rather whether the evidence is of a quality to assure that a guilty verdict is solidly founded . . . . [Here,] the testimony, although in a sense circumstantial, is absolutely inconsistent with Collins' innocence.'). *United States v. Bergman,* 354 F.2d 931, 934 (2d Cir. 1966) ('circumstantial evidence of a highly reliable order'). *United States v. Maultasch,* 596 F.2d 19, 25 n.9 (2d Cir. 1979) ('other evidence of independent probative value, circumstantial or direct, that is "of quality to assure that a guilty verdict is solidly founded" ' [citation omitted]). *United States v. Neff,* 212 F.2d 297, 306–307 (3d Cir. 1954) ('strong, clear, convincing and direct'). *United States v. Rose,* 215 F.2d 617, 621 (3d Cir. 1954) (same). *Allen v. United States* 194 F.2d 664, 668 (4th Cir. 1912) ('to convict of perjury the government must produce testimony of a more direct and positive character than is required to justify a verdict of guilty of other offenses'). *Van Liew v. United States,* 321 F.2d 674, 679 (5th Cir. 1963) ('the Government had the burden of proving by clear, convincing and direct evidence to a moral certainty and beyond a reasonable doubt that the [d]efendant . . . purposefully misstated that fact . . . .'). *United States v. Forrest,* 639 F.2d 1224, 1226 (5th Cir. 1981) (' . . . the evidence must be strong, clear, convincing and direct. Where the government seeks to establish perjury by the testimony of one witness and corroborating evidence, the latter must be independent of the former and inconsistent with the innocence of the defendant.') *United States v. Edwards,* 443 F.2d 1286, 1294 (8th Cir.), cert. denied, 404 U.S. 944 [92 S. Ct. 295, 30 L. Ed. 2d 259] (1971) ('substantial evidence excluding every other hypothesis than that of guilt'). *United States v. Koonce,* 485 F.2d 374, 381 (8th Cir. 1973) ('clear, convincing and direct evidence'). *United States v. Armillo,* 705 F.2d 939, 941 n.5 (8th Cir.), cert. denied, [464 U.S. 891, 104 S. Ct. 235, 78 L. Ed. 2d 227] (1983) ('This "clear, convincing and direct evidence" language does not articulate a standard for weighing the evidence, but requires that the government present particular kinds of evidence . . . .'). *Hart v. United States,* 131 F.2d 59, 61 (9th Cir. 1942) ('clear, convincing, and direct')." *Commonwealth v. Coleman,* 20 Mass. App. 541, 557–58 n.21, 481 N.E.2d 532 (1985).

*States* v. *Rose,* 215 F.2d 617, 625 (3d Cir. 1954). One court put it this way: "[T]he corroborative evidence must be inconsistent with the innocence of the accused and must tend to show the perjury independently of the testimony which it is intended to corroborate." *United States* v. *Forrest,* supra.[9]

A careful review of the evidence introduced in this case reveals that the documentary evidence that the defendant testified falsely in the DeJesus trial was not independently corroborated, so that it cannot be said that the state discharged its burden of proof beyond a reasonable doubt on this essential element of the crime charged.[10] The only evidence introduced by the state to show that the defendant "lied" in the prior trial was an array of school attendance records. Although the records showed that Angelica had not been recorded as absent on three or four of the days during the week that the defendant testified that Angelica was in Massachusetts, the state concedes that because these documents emanate from only one source, Labet, they

---

[9] There are a few limited exceptions to the one-witness-plus-corroboration rule, none of which is applicable in this case. For example, the corroboration requirement has been held not to apply where the falsity of the oath is established by documentary evidence or written testimony springing from the defendant himself. See, e.g., *United States* v. *Wood,* 39 U.S. 430, 443, 10 L. Ed. 527 (1840); *United States* v. *Collins,* 272 F.2d 650, 652 (2d Cir. 1959); *United States* v. *Flores-Rodriguez,* 237 F.2d 405 (2d Cir. 1956); *Phair* v. *United States,* 60 F.2d 953 (3d Cir. 1932). A second situation where it has been held that corroboration is not required is where the falsity of the oath is established by public record known to the defendant when he took the oath. See, e.g., *United States* v. *Flores-Rodriguez,* supra.

[10] We point out that requiring the evidence in cases where there is no live witness, to be of a highly reliable order, does not articulate a standard for weighing the evidence but it does require that the state present a particular kind of evidence on the element of falsity. The evidence presented by the state in a perjury prosecution must, of course, be such as to convince the jury beyond a reasonable doubt. In other words, the evidence the state is required to present on the issue of falsity must qualitatively be of a highly reliable order. This requirement is not at all any qualification of the reasonable doubt rule.

constitute only one piece of evidence tending to prove falsity.[11] The state provided no evidence corroborating these records, choosing instead to rely solely on the attendance records to establish falsity. Because Labet testified that she had no personal recollection of whether Angelica had been in or out of school during the week of May 17–21, 1982, she provided no independent corroboration of the records. The state's witness Delk did not work at the school where Labet made the original records and also had no independent knowledge of the information they purported to contain. We conclude, therefore, that the state failed to meet its burden of proof as to the falsity of the defendant's testimony because a single uncorroborated piece of documentary evidence, under the circumstances of this case, is legally insufficient to establish the essential element of falsity.

In arguing that the one-witness-plus-corroboration rule does not apply to cases in which the state relies upon documentary evidence to establish falsity, the state relies heavily on the United State Supreme Court's opinion in *United States* v. *Wood,* supra. In *Wood,* the defendant was charged with having sworn falsely to the United States customs department about the price of goods he had imported. To show the falsity of the oath, the government presented an invoice book belonging to the defendant's father and business partner, and letters written by the defendant to his father describing the intended fraud. The state fails to acknowledge that in *Wood* the United States Supreme Court carefully limited its holding to a case where the "documentary or written testimony spring[s] from [the defendant] himself . . . ." Id., 441. We note also that

---

[11] These records were "layered" in the sense that they all depended upon original daily records which were, in turn, transposed by hand onto successive sets of attendance records. Cross-examination disclosed that such transpositions were not entirely accurate.

in *Wood* the evidence consisted of two entirely independent pieces of documentary evidence, the letters written by the defendant himself and the invoice books of his father. Under the circumstances of this case, *Wood* cannot avail the state.

In support of its argument, the state also relies upon the case of *Commonwealth* v. *Robinson,* supra. In *Robinson,* the defendant was charged with three counts of perjury. The charges arose from the testimony of the defendant given at a bail revocation hearing. At that hearing, the defendant testified that he had not been present for a hearing on October 4, 1980, because on that date, he had been incarcerated in prison out of state. He testified also that he had been unable to appear for a hearing on March 31, 1978, because he was then a patient at the Medical College of Pennsylvania. Finally, he testified that he was an employee of Budd Company, having worked for that company for a period of four years. In order to show the falsity of the defendant's testimony, the Commonwealth relied upon the records of the prison, the hospital and the Budd Company. The respective records showed that on the dates in question the defendant had not been a prisoner, a patient or an employee. A careful review of the documentary evidence in that case reveals, however, that as to each instance of perjury, the Commonwealth relied on more than a *single* uncorroborated document to establish falsity. See id., 153. *Robinson,* therefore, is not dispositive of the state's position.

The trial court erred in denying the defendant's motion for judgment of acquittal. See *State* v. *Gray,* 200 Conn. 523, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

There is error, the judgment is set aside and the matter is remanded with direction that a judgment of acquittal be rendered.

In this opinion the other justices concurred.