STATE OF CONNECTICUT *v.* TIMOTHY IASSOGNA
(AC 25525)

Schaller, McLachlan and Hennessy, Js.

Argued March 22—officially released June 6, 2006

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Joseph T. Corradino*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Rachel E. Salazar*, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Timothy Iassogna, appeals from the judgment of conviction, rendered after a jury trial, of perjury in violation of General Statutes § 53a-156 (a). On appeal, the defendant claims that (1) there was insufficient evidence to sustain his conviction and (2) the court improperly instructed the jury. We affirm the judgment of the trial court.

The genesis of the perjury charge against the defendant occurred on December 29, 2000. On that day, three individuals, the defendant, Carl Alexander and Burley Whitten,[1] forced their way into the home of Margaret Morrison at gunpoint. Morrison knew the defendant, who had been a friend of her son. The three men, who were looking for money, guns and jewelry, bound and gagged Morrison with duct tape and stole various items

---

[1] Whitten's first name was spelled both as "Burley" and "Burly" in the trial transcript.

from the home.[2] The intruders also forced Morrison to issue three checks, made payable to cash, totaling $1500.

Following his arrest, the defendant, on several occasions, indicated that two individuals took part in the criminal activity with him at the Morrison home. At Whitten's criminal trial, the state called the defendant as a witness. After the witness oath was administered, the defendant repeatedly contradicted his prior statements and testified that only he and Alexander had participated in the burglary at Morrison's home. The jury found Whitten not guilty of the criminal charges stemming from the December 29, 2000 incident.

On May 15, 2003, the state charged the defendant with one count of perjury. The jury found the defendant guilty, and the court rendered judgment in accordance with that verdict. The defendant was sentenced to a prison term of five years incarceration, and the court ordered the sentence to run consecutively to the fifteen year term that the defendant was then serving. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that there was insufficient evidence to sustain his conviction. Specifically, he argues that the evidence adduced at trial did not prove the element of falsity beyond a reasonable doubt. We are not persuaded.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict.

---

[2] Both the defendant and Alexander subsequently pleaded guilty to the charges stemming from the criminal activity at Morrison's home.

Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"In reviewing the sufficiency of the evidence in a case involving a conviction for perjury . . . there is an additional inquiry: whether the evidence is sufficient to satisfy the requirements of the so-called one-witness-plus-corroboration rule. . . . Under this rule, a perjury conviction cannot be based solely upon the testimony of a single witness; it must also be based on corroborative evidence that tends to establish the falsity of the statement, independently of the principal evidence that it corroborates." (Citation omitted; internal quotation marks omitted.) *State* v. *Servello*, 80 Conn. App. 313, 318–19, 835 A.2d 102 (2003), cert. denied, 267 Conn. 914, 841 A.2d 220 (2004); see also *State* v. *Meehan*, 260 Conn. 372, 386, 796 A.2d 1191 (2002); *State* v. *Campbell*, 93 Conn. 3, 12, 104 A. 653 (1918); *State* v. *Crotty*, 17 Conn. App. 395, 399–400, 553 A.2d 620, cert. denied, 211 Conn. 802, 559 A.2d 1137 (1989). This rule, a modification of the common-law "two witness rule," is "an almost unique exception to the general rule that evidence which is sufficient to convince the jury of the defendant's guilt beyond a reasonable doubt is sufficient to sustain a conviction." (Internal quotation marks omitted.) *State* v. *Sanchez*, 204 Conn. 472, 477, 528 A.2d 373 (1987). This special rule is "contrary to the principle followed in our justice system that the ultimate measure of testimonial worth is quality and not quantity." (Internal quotation marks omitted.) Id., 478.

Section 53a-156 (a) provides that "[a] person is guilty of perjury if, in any official proceeding, he intentionally, under oath, makes a false statement, swears, affirms or testifies falsely, to a material statement which he does not believe to be true." On appeal, the defendant

challenges only the sufficiency of the evidence with respect to the element of falsity.

The following additional facts are necessary for our resolution of this matter. During the defendant's perjury trial, Morrison testified that three individuals—the defendant, and two black men whom she later learned were Alexander and Whitten—forcibly entered her home at gunpoint, robbed her, restrained her with duct tape and locked her in a bathroom. When he arrived home, Morrison's husband found her and was able to free her from the bathroom. He did not, however, remove the duct tape from her mouth. While still gagged with the duct tape, she wrote the following on the back of an envelope. "It was [the defendant] w/ two big black guys. Went to the bank w/ [bank] card and [personal identification number] and (3) $1500 signed checks . . . ."[3]

The defendant was arrested on January 1, 2001. He provided the police with a voluntary statement admitting his participation in the criminal activity at the Morrison home. He also stated that he committed this offense with "two kids" with whom he had smoked marijuana. He refused to identify them by name because of his affiliation with a gang known as "the Nation." He concluded his statement by indicating that he understood that it was given under oath. The next day, the defendant provided the police with a second voluntary

---

[3] The court admitted into evidence the statement written on the envelope as a spontaneous utterance. "The excited [or spontaneous] utterance exception is well established. Hearsay statements, otherwise inadmissible, may be admitted into evidence to prove the truth of the matter asserted therein when (1) the declaration follows a startling occurrence, (2) the declaration refers to that occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant. *State* v. *Kelly*, 256 Conn. 23, 41–42, 770 A.2d 908 (2001); Conn. Code Evid. § 8-3 (2); 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 97c, p. 949." (Internal quotation marks omitted.) *State* v. *Arluk*, 75 Conn. App. 181, 187, 815 A.2d 694 (2003).

written statement. He indicated that he knew where Alexander and Whitten were hiding. He expressly stated that Whitten had participated in the burglary.[4]

On January 18, 2001, the defendant sent a letter to Vincent Ingrassia, a Bridgeport police detective. In this letter, the defendant expressed remorse for what he had done to Morrison. He also was concerned that "those two kids" would attempt to harm Morrison. On February 14, 2001, the defendant provided the police with a third statement. He indicated that he had reviewed his prior statements and that he had sent a letter to Ingrassia. He then provided specific details about Whitten, including a physical description and information about Whitten's activities both during the burglary and afterward. Ingrassia then showed the defendant a photographic array, and the defendant identified Whitten as the third person who had participated in the criminal activity at Morrison's home on December 29, 2000. This statement was signed by the defendant and then notarized.

At Whitten's criminal trial, the defendant was called as a witness by the state on January 7, 2003. Prior to the start of his testimony, he was duly sworn by the clerk of the court.[5] The defendant admitted his involvement in the entry of Morrison's home on December 29, 2000, but testified that the only person with him was Alexander. He also acknowledged his prior statements about Whitten's involvement but said he had lied because he wanted to get "the least [amount of jail] time possible." During his testimony, the defendant consistently maintained that he had gone to Morrison's home only with Alexander and that no other individual had participated in the home invasion, robbery and

---

[4] At the time of this statement, the defendant knew Whitten as "Daquan" and he later identified "Daquan" as Whitten.

[5] Thomas St. John, a court officer, testified that he administered the witness oath to the defendant at Whitten's criminal trial.

restraint of Morrison. Furthermore, he testified that any prior statements that implicated Whitten, or any other third person, were lies.

Viewed in a light most favorable to the state, we conclude that there was an abundance of evidence to support the defendant's conviction. It was well within the province of the jury, as the trier of fact, to credit Morrison's express testimony, coupled with her written statement, that she was certain that three men had participated in the December 29, 2000 invasion of her home and the accompanying criminal offenses. Her testimony was corroborated independently by the defendant's numerous prior statements regarding the events of December 29, 2000, that he had made to Ingrassia. This independent corroboration consisted of not only the defendant's three written statements to the police but his letter to Ingrassia as well.[6] The defendant's prior statements to the police corroborated Morrison's testimony that three individuals had broken into her home and committed an assortment of crimes. There was sufficient evidence for the jury to find that the defendant's statements, made under oath, at Whitten's criminal trial were false.[7] We conclude, therefore, that the defendant's claim that the evidence was insufficient to sustain his conviction for perjury must fail.

[6] Our Supreme Court has noted a few limited exceptions to the one witness plus corroboration rule. "For example, the corroboration requirement has been held not to apply where the falsity of the oath is established by documentary evidence or written testimony springing from the defendant himself. . . . A second situation where it has been held that corroboration is not required is where the falsity of the oath is established by public record known to the defendant when he took the oath." (Citations omitted.) *State* v. *Sanchez*, supra, 204 Conn. 482 n.9.

[7] We note that the state was not required to prove beyond a reasonable doubt that Whitten participated in the invasion of Morrison's home. The state's burden was to prove beyond a reasonable doubt that the defendant's testimony at Whitten's criminal trial that only he and one other individual had broken into Morrison's home and committed a crime therein was false. The identity of the third participant was not required.

## II

The defendant next claims that the court improperly instructed the jury. Specifically, he argues that the court's instruction failed to explain properly the "one-witness-plus-corroboration" rule. We conclude that even if the court's instructions were improper, any error was harmless.

The defendant concedes that this claim is unpreserved and requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine. See Practice Book § 60-5. "In *Golding*, our Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. *The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances.* . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Emphasis in original; internal quotation marks omitted.) *State* v. *Coltherst*, 87 Conn. App. 93, 108, 864 A.2d 869, cert. denied, 273 Conn. 919, 871 A.2d 371 (2005). We review this claim because the defendant has raised a constitutional claim involving a fundamental right, and the record is adequate for review. See *State* v. *Denby*, 235 Conn. 477, 483–84, 668 A.2d 682 (1995).

"The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established. . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 864–65, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006). Additionally, "[t]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Straub*, 90 Conn. App. 147, 152–53, 877 A.2d 866, cert. denied, 275 Conn. 927, 883 A.2d 1252 (2005); see also *State* v. *Walker*, 90 Conn. App. 737, 740, 881 A.2d 406, cert. denied, 275 Conn. 930, 883 A.2d 1252 (2005).

The following additional facts are relevant to our discussion. The court charged the jury as follows: "The

third element. The third element is that the testimony must be intentionally false. This means that it must be untrue in fact. The word false has both an objective and a subjective meaning. The testimony in question must be untrue in fact and cannot be a statement that was unresponsive or ambiguous or one that is literally true. In order to satisfy this element, the state must establish beyond a reasonable doubt that the defendant testified falsely and did so deliberately and consciously and with the specific intent to deceive, knowing at the time that the testimony was false and intending to convey the false information of what he said.

"On the issue of the falsity of the defendant's statement, it is not enough for the state to present only the uncorroborated or unsupported testimony of one witness to the falsity of the defendant's statement. The testimony under oath at the trial of only one witness uncorroborated or unsupported by any other credible or believable testimony or evidence is not enough to justify a conviction of perjury.

"In other words, the falsity of the defendant's testimony cannot be proven solely on the basis of the uncorroborated testimony of a single witness, even if you find that witness' testimony credible. But the testimony of one credible witness accompanied by the proof of independent and material facts and circumstances tending directly to corroborate or support the testimony of the one credible witness does justify a conviction so long as you are satisfied beyond a reasonable doubt of the falsity of the testimony of the defendant.

"The supporting or corroborating evidence must be more than slight. The evidence supporting or corroborating the one credible witness must be strong enough to overcome the opposing evidence and the presumption of innocence and establish the defendant's guilt beyond a reasonable doubt.

"In this case, the state has offered evidence of the falsity of the defendant's testimony at an official proceeding involving the jury trial of . . . Whitten regarding whether . . . Whitten was one of the two parties who accompanied the defendant when he committed an unlawful invasion of the home of . . . Morrison or whether the defendant was only . . . accompanied by . . . Alexander.

"It is only necessary that the credible testimony of any witness to the falsity of the defendant's statement be directly corroborated or supported by some other credible testimony or evidence [and] that this corroborating testimony or evidence be more than slight and that it be strong enough to overcome the opposing evidence and the presumption of innocence and establish the defendant's guilt beyond a reasonable doubt."

The defendant essentially argues that the court's charge misled the jury because it failed to clarify and to explain properly the requirement that the corroboration of the witness' testimony come from an independent source. The defendant further contends that because the prosecutor, defense counsel and the trial judge referred to Morrison's letter as an example of corroboration of her testimony, it was likely that the jury was misinformed about required proof of one of the elements of the perjury charge.[8] Even if we accepted the defendant's claims regarding the court's charge, we conclude that any error was harmless beyond a reasonable doubt due to the uncontested and overwhelming corroborating evidence.

In *State* v. *Sanchez*, supra, 204 Conn. 472, our Supreme Court instructed that "[t]he corroboration requirement is satisfied only with evidence that is independent of the principal evidence which it corroborates. When the courts speak of corroborative evidence they

---

[8] This discussion occurred outside the presence of the jury.

mean *evidence aliunde*—evidence which tends to show perjury independently." (Emphasis in original; internal quotation marks omitted.) Id., 480–81. The court again stressed that the corroborative evidence "must tend to show the perjury independently of the testimony which it is intended to corroborate." (Internal quotation marks omitted.) Id., 482; see also *State* v. *Meehan*, supra, 260 Conn. 386.

The defendant correctly argues, on the basis of *Sanchez* and *Meehan*, that he could not be convicted solely on the basis of Morrison's in-court testimony corroborated by her out-of-court written statement indicating that it was three men who had criminally invaded her home.[9] A conviction supported only by one witness, uncorroborated by an independent source, requires reversal on the ground of insufficient evidence. Our point of departure with the defendant's claim, however, is the argument that the court's instruction misled at least one of the jurors to convict him on the basis of insufficient evidence.

At the outset of our discussion, we note that the court specifically instructed the jury regarding the need for independent corroboration. The court stated: "But *the testimony of one credible witness accompanied by the proof of independent and material facts and circumstances tending directly to corroborate or support the testimony* of the one credible witness does justify a conviction so long as you are satisfied beyond a reasonable doubt of the falsity of the testimony of the defendant." (Emphasis added.) The court also charged the jury that falsity could not be proven solely on the basis of one witness.

---

[9] The special rule in perjury cases is designed to protect witnesses from disappointed litigants. *State* v. *Sanchez*, supra, 204 Conn. 478. "The purpose of the rule [is] to prevent ill-founded retaliatory attack by perjury prosecution upon a witness on no more than the contrary oath of another." (Internal quotation marks omitted.) Id.

Nevertheless, even if we assume arguendo that it was reasonably possible that the jury was misled by the court's charge and believed that it could convict the defendant of perjury on the basis of Morrison's testimony, corroborated by her out-of-court written statement, we conclude that any such error was harmless.

"When a jury is misinstructed on an essential element of a crime and a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. *Rose* v. *Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986). Further, a jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 167, 869 A.2d 192 (2005); see also *State* v. *Kirk R.*, 271 Conn. 499, 517, 857 A.2d 908 (2004); *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000); *State* v. *Vazquez*, 87 Conn. App. 792, 796, 867 A.2d 15, cert. denied, 273 Conn. 934, 875 A.2d 544 (2005). Our careful review of the record reveals overwhelming evidence that the verdict would have been the same had the court clarified its instruction and expressly charged the jury that Morrison's testimony needed to be corroborated by an independent source.

The state presented evidence that the defendant, after he was arrested, indicated on four separate occasions that two other individuals participated in the criminal activity at Morrison's home on December 29, 2000. On January 1 and 2, 2001, the defendant made voluntary statements to the investigating officers, implicating two other persons. In his letter to Ingrassia, dated January

18, 2001, the defendant indicated that he was concerned about possible retribution against Morrison by "two kids." On February 14, 2001, the defendant provided the police with a third voluntary statement in which he again stated that two others had participated in the criminal activity with him, and he identified Whitten from a photographic array. Finally, the defendant admitted at Whitten's trial that he previously had lied under oath and was willing to do anything to protect himself. In short, the state presented overwhelming and undisputed evidence that corroborated Morrison's testimony and written statement. In light of this evidence, we conclude that any instructional error was harmless beyond a reasonable doubt and, therefore, the defendant's claim fails under *Golding*'s fourth prong.

The judgment is affirmed.

In this opinion the other judges concurred.