## STATE OF CONNECTICUT *v.* WILLIAM RADO, SR. (5387)

DALY, BIELUCH and FOTI, Js.

Argued on December 9, 1987—decision released May 3, 1988

*Timothy C. Moynahan,* with whom, on the brief, was
*Theresa M. Dalton,* for the appellant (defendant).

*Christopher Malany,* deputy assistant state's attor-
ney, with whom, on the brief, was *Domenick Galluzzo,*
assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment
of conviction, after a jury trial, of three counts of bribe
receiving in violation of General Statutes § 53a-148 (a).[1]
The defendant challenges the constitutionality of the
investigating grand juror and argues that the trial court
erred in denying his motion to dismiss filed on the basis
of insufficient evidence and in denying him access to
the grand juror transcripts.

The jury could reasonably have found the following
facts. The defendant, a former mayor of Naugatuck,
on three occasions manipulated the process by which
municipal construction contracts were awarded. Twice
the defendant altered the process under which public
contracts were awarded by providing Ronald Albaitis,
one of the three partners in the family owned Albaitis
Brothers Construction Company, with the necessary
information for obtaining the contract; the defendant
supplied Albaitis with the dollar figure of the lowest
bid and allowed Albaitis to resubmit an altered bid after
the bidding was supposedly closed.[2] On a third occa-

---

[1] General Statutes § 53a-148. "BRIBE RECEIVING: CLASS D FELONY. (a) A
public servant or a person selected to be a public servant is guilty of bribe
receiving if he solicits, accepts or agrees to accept from another any bene-
fit for, because of, or as consideration for his decision, opinion, recommen-
dation or vote."

[2] The defendant informed Albaitis that the lowest bid on the construc-
tion contract for the drainage of the high school field was $16,295. After
the silent bidding was closed, the defendant handed Albaitis the necessary

sion, the defendant awarded Albaitis' company a $5000 brook blasting contract without requiring bidding despite the borough charter provision that advertising for bids was required for all contracts over $1000.[3] On each of the three occasions, the defendant demanded and received a $1000 bribe for altering the process in favor of Albaitis Construction.

On November 18, 1983, the chief state's attorney made an application to the chief court administrator pursuant to General Statutes (Rev. to 1985) § 54-47[4] requesting that an inquiry be made concerning certain irregularities in the conduct of public officials in the borough of Naugatuck. The grand juror, *Stoughton, J.,* heard testimony from Albaitis and William Gogin, the town comptroller. Upon the completion of the investigation, the grand juror compiled a report. On April 10, 1985, the defendant was arrested as a result of this report. Eventually, the defendant was tried and found guilty, by a jury, of three counts of bribe receiving.

The defendant's first claim of error is that it is unconstitutional for a judge to act as grand juror. Specifically, the defendant argues that having a judge perform

bid bond and subsequently accepted the altered bid. Albaitis changed his original bid of $64,000 to $16,195 and, as a result, was awarded the contract. The second contract called for building graduation steps at the high school. Once again, after informing Albaitis of the lowest bid and after the bidding was closed, the defendant accepted Albaitis' altered bid from $50,000 to $32,455.

[3] On the brook blasting contract, the defendant called Albaitis and the two inspected the brook. After inspection, Albaitis estimated the price of the work at $6500. The defendant, later, phoned Albaitis and informed him that the contract was his for $4000 with $1000 payable for receiving the contract.

[4] Prior to its repeal by Public Acts 1985, No. 85-611, General Statutes § 54-47 (b) provided in relevant part: "The chief state's attorney . . . may also apply to the chief court administrator for an order that an inquiry be made to determine whether or not there is probable cause to believe that a crime or crimes have been committed."

the functions of a grand juror violates the separation of powers doctrine. We find that the claim is without merit.

As a preliminary matter, we must first decide whether the defendant has standing to raise this claim. " 'Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. See, e.g., *Baker* v. *Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *Stern* v. *Stern,* 165 Conn. 190, 192, 332 A.2d 78 (1973). These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity.' *Maloney* v. *Pac,* 183 Conn. 313, 320-21, 439 A.2d 349 (1981). The question of standing does not involve an inquiry into the merits of the case. It merely requires the plaintiff to make allegations of a colorable claim of injury to an interest which is arguably protected or regulated by the statute or constitutional guarantee in question. *Data Processing Service* v. *Camp,* 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1969); *Ducharme* v. *Putnam,* 161 Conn. 135, 139, 285 A.2d 318 (1971)." *Reitzer* v. *Board of Trustees of State Colleges,* 2 Conn. App. 196, 199-200, 477 A.2d 129 (1984).

In the present case, the defendant cannot claim that he has any cognizable legal interest in the validity of the inquiry, even when it might lead to his arrest. Unlike a search warrant, which authorizes governmental invasion of a person's privacy interest, the one-man grand juror conducts a general investigation into the commission of a crime. The existence of a general

investigation violates no one's rights. Absent proof of a violation of a right personal to the defendant, such as his privilege against self-incrimination, the defendant lacks standing.

Even if we assume that the defendant's claims are reviewable, he has failed to prove that the statute was unconstitutional. In reviewing the claim, we must follow the rule set forth in *State* v. *Olds,* 171 Conn. 395, 370 A.2d 969 (1976). " 'We approach the question with great caution, examine it with infinite care, make every presumption and intendment in favor of validity, and sustain the act unless its invalidity is, in our judgment, beyond a reasonable doubt.' " *State* v. *Olds,* supra, 411, quoting *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599 (1958). The party challenging the constitutionality of a statute bears a "heavy burden" of proving unconstitutionality beyond a reasonable doubt. *State* v. *Hernandez,* 204 Conn. 377, 385, 528 A.2d 794 (1987). The defendant has failed to meet this burden.

We begin this analysis by stating that investigating inquiries by a judge have been held, in part, constitutional. *State* v. *Moynahan,* 164 Conn. 560, 565–67, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973); *McCarthy* v. *Clancy,* 110 Conn. 482, 495–97, 148 A. 551 (1930). The defendant's argument simply stated is that the former General Statutes (Rev. to 1985) § 54-47 offends the separation of powers doctrine. He asserts that the relationship between the judge and prosecutor "is an intercourse which is foul, unhealthy, abnormal and unnatural," because it confers to the judge the powers of the prosecutor. The defendant's argument clearly ignores the weight of authority.

"It is rudimentary that the three branches of government do not exist in discrete, airtight compartments, and that the rule of separation of governmental powers

cannot always be rigidly applied." *State* v. *Darden,* 171 Conn. 677, 679, 372 A.2d 99 (1976). Moreover, it is clear that " '[the] great functions of government are not divided in any such way that all the acts of the nature of the functions of one department can never be exercised by another . . . .' " *State* v. *Clemente,* 166 Conn. 501, 510, 353 A.2d 723 (1974), quoting *In re Application of Clark,* 65 Conn. 17, 38, 31 A. 522 (1894). The test or standard used is whether the function exercised by the judge is " ' "reasonably incidental to the performance of judicial duties." ' " *Adams* v. *Rubinow,* 157 Conn. 150, 160, 251 A.2d 49 (1968). The sole purpose of the one-man grand jury was to determine if there was probable cause to believe that crimes had been committed. Such a determination of probable cause has traditionally been a judicial function. See *State* v. *Heinz,* 193 Conn. 612, 616–17, 480 A.2d 452 (1984). Moreover, grand jury proceedings have, by our Supreme Court, been considered "an appendage of the court." *State* v. *Curcio,* 191 Conn. 27, 32, 463 A.2d 566 (1983). Finally, in *McCarthy* v. *Clancy,* supra, 499, our Supreme Court acknowledged the fact that the investigatory inquiry has been recognized as an appropriate judicial function by holding: "No question has heretofore been raised, so far as we are aware, as to the right of the General Assembly to cast upon justice the power to investigate crimes; nor do we think it is open to question. In an administrative capacity, they may pursue the investigation authorized by the statute in question . . . . "

The defendant has, additionally, asserted that the judicial inquiry creates a pervasive judicial bias which infects the cases which have begun with the one-man grand jury. The claim is that the trial court is improperly influenced by the investigatory reporting because they all belong to the same "judicial club." Once again, the defendant's claim is off base.

"Under Canon 3 (c) (1) of the code of Judicial Conduct '[a] judge should disqualify himself [or herself] in a proceeding in which his [or her] impartiality might *reasonably* be questioned. . . . ' " *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 744–45, 444 A.2d 196 (1982). Our Supreme Court has held that recusal is mandated where a reasonable person, with knowledge of the facts would be led to conclude that a judge's " 'impartiality might reasonably be questioned.' " Id., 746. In this case, such a conclusion is not warranted. The finding of probable cause by another judge is not deemed conduct which would lead a reasonable person to the conclusion that the judge's impartiality might be questioned.

In his second claim of error, the defendant argues that the trial court erred in denying the defendant's motion to dismiss. The defendant puts forth two arguments in support of this claim. The first argument is that the court should have granted a judgment of acquittal because his conduct was not a "decision, opinion, recommendation or vote" within the meaning of the bribe receiving statute.[5] The second argument is a claim that the prosecution was improper. He claims that prosecution for a bribe resulting from the disclosure of information is preempted by the disclosure of bid or proposal statute, General Statutes § 53a-161b.[6] Both arguments are without merit.

---

[5] See footnote 1, supra.

[6] General Statutes § 53a-161b. "DISCLOSURE OF BID OR PROPOSAL: CLASS A MISDEMEANOR. Unless otherwise required by law, the prices quoted in a bid or proposal for any contract to be awarded by any commission, agency or department of the state or any political subdivision of the state shall not be disclosed by the *bidder or offeror* prior to the opening, in the case of a bid, or prior to the award, in the case of a proposal, directly or indirectly to any other *bidder or offeror or to any competitor.* Any person who violates the provisions of this section shall be guilty of a class A misdemeanor." (Emphasis added.)

It is axiomatic that courts are required to read a statute in light of its purpose. In *State* v. *Carr,* 172 Conn. 458, 468, 374 A.2d 1107 (1977), our Supreme Court construed the bribery statute, General Statutes (Rev. 50 1985) § 53a-147, in stating that "the statute [should] be construed broadly in order to . . . prevent corruption in the public service . . . ." Furthermore, courts must interpret nontechnical words by their "commonly approved usage." General Statutes § 1-1 (a); see also *State* v. *Chiarizio,* 8 Conn. App. 673, 680, 514 A.2d 370, cert. denied, 201 Conn. 809, 515 A.2d 379 (1986). The word "decision" is commonly used as meaning "act of forming an opinion or of deciding upon a course of action." Webster, Third New International Dictionary. In this case, the state presented sufficient evidence that the defendant's conduct indicated that he had made up his mind on a course of action when he embarked upon a disclosure of competing bids and in the one instance of awarding the contract without competitive bidding.

Moreover, the legislative history of the statute is helpful in construing the statute. *State* v. *West,* 192 Conn. 488, 494, 472 A.2d 775 (1984); *State* v. *Giorgio,* 2 Conn. App. 204, 209, 477 A.2d 134 (1984). The original bribe receiving statute defined the scope of conduct as embracing a "decision . . . or other act of discretion." In that context a decision was equivalent to any exercise of discretion by the public servant.[7] Although the "other act of discretion" language was later omitted in the passage of the present statute, State Senator Salvatore C. DePiano, the author of the new bill characterized the change as merely "technical." 23 S. Proc.,

---

[7] Model Penal Code § 240.1 (Proposed Official Draft 1962) also defined bribery as requiring a "decision, opinion, recommendation, vote or other exercise of discretion . . . ." The comment on that particular section notes: "The official action focuses on decision-making, i.e., upon the exercise of discretion by the designated person. It is designed to include *minor ministerial acts* as well as major decisions of policy." (Emphasis added.) Id.

Pt. 12, 1980 Sess., p. 3820. The author further commented that the intent underlying the change was to "broaden the criteria under which a person could be found guilty of . . . bribe receiving . . . . " Id. With the legislative history, it is abundantly clear that the defendant's actions were included in the statute.

In the defendant's second argument, he claimed that he should not have been charged with violating General Statutes § 53a-148 (a), a class D felony, but should, instead, have been charged with General Statutes § 53a-161b, a class A misdemeanor. It is firmly established in Connecticut case law, however, that a prosecutor may charge any offense reasonably supported by the facts. *State* v. *O'Neill,* 200 Conn. 268, 279–80, 511 A.2d 321 (1986); *State* v. *Riggs,* 7 Conn. App. 180, 185, 508 A.2d 67, cert. denied, 200 Conn. 804, 510 A.2d 191 (1986).

In this case, we need only examine the plain language of the statute to disregard the defendant's claim. See *State* v. *Ellis,* 197 Conn. 436, 442, 497 A.2d 974 (1985). The statute, on its face, applies only to bidders and offerors. The plain language combined with the legislative history[8] clearly indicates that § 53a-161b was intended to penalize collusion among contractors seeking state or municipal contracts and not the corrupt public official.

In the final issue, the defendant argues that the trial court erred in denying his motion for disclosure of transcripts of witnesses who appeared before the one-man grand jury. Before trial, the defendant sought to obtain

---

[8] In summarizing the proposed legislation that would become § 53a-161b, Representative Richard D. Tulisano explained that the purpose was to "disallow *inside dealing between competitors* to fix prices and restrict price competition in bidding against, in dealing with both the State and political subdivisions of the State. (Emphasis added.) 23 H.R. Proc., Pt. 20, 1980 Sess., p. 5938.

the testimony of Albaitis and Gogin which was, after their direct testimony, given to the defendant. Although the defendant offered no compelling reasons for the disclosure, he now argues that he was deprived of his constitutional rights to confrontation and due process of law. We find no merit in these claims.

The defendant in a criminal prosecution has a constitutional right to confront the witnesses against him. *Douglas* v. *Alabama,* 380 U.S. 415, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); see also *State* v. *Shindell,* 195 Conn. 128, 140, 486 A.2d 637 (1985). The Supreme Court, however, has held that a denial of access to grand jury transcripts is not a violation of the confrontation clause. *Pennsylvania* v. *Ritchie,* 309 U.S. 316, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987). This court's recent analysis is consistent with *Ritchie* in stating that "the right to confrontation is the right to cross-examine and not the right to an all-inclusive cross examination." *State* v. *D'Ambrosio,* 14 Conn. App. 309, 316, 541 A.2d 880 (1988).

The defendant's claim that nondisclosure of the transcript offended his due process rights is, likewise incorrect. This court has recently stated in *State* v. *Waterman,* 7 Conn. App. 326, 345, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986): "A defendant has no absolute right to inspect investigative grand jury testimony for the purpose of assisting him in preparation of a defense." (Citation omitted.) Connecticut case law is rich with citations that the safeguarding of the secrecy of the grand jury is an important task that the trial courts assume.[9] See, *In re Final Grand Jury Report Concerning the Torrington Police Department,* 197 Conn. 698, 709–712, 501 A.2d 377 (1985); *In re Investigation of the Grand Juror,* 4 Conn. App. 544, 553, 495 A.2d 1098 (1985). Because of the important interests in preserving secrecy, a party requesting dis-

closure must make a showing of a "particularized need." *In re Final Grand Jury Report Concerning the Torrington Police Department,* supra, 712. Further, the trial court's decision on disclosure is entitled to every reasonable presumption of correctness. Id., 714. In this case, the defendant made no such showing. The defendant merely asserted, in conclusory terms, that a general rule of disclosure of the transcript would be more advantageous. The trial court did not err in ruling that the defendant did not meet this burden of particularized need.

There is no error.

In this opinion the other judges concurred.

---

[9] "Safeguarding the confidentiality of grand jury proceedings serves a number of functions. 'First, if [precharging] proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. . . . Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.' " *In re Final Grand Jury Report Concerning the Torrington Police Department,* 197 Conn. 698, 709–712, 501 A.2d 377 (1985), quoting *Douglas Oil* v. *Petrol Stops Northwest,* 441 U.S. 211, 219, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979).