STATE OF CONNECTICUT *v.* JOHN CROTTY
(6166)

DUPONT, C. J., SPALLONE and FOTI, Js.

Argued October 7, 1988—decision released January 31, 1989

■■■■■■■

*Michael J. McClary,* with whom, on the brief, were *Hugh F. Keefe, John J. Keefe, Jr.,* and *Charles E. Tiernan III,* for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, with whom, on the brief, were *Domenick Galluzzo,* deputy chief state's attorney, and *Cathryn Krinitsky,* deputy assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, after a jury trial, of the crime of perjury in violation of General Statutes § 53a-156.[1]

The defendant claims that the trial court erred (1) in finding that there was sufficient evidence presented at trial to establish the falsity of his statement to a grand jury, and (2) in failing to provide him with a complete transcript of the testimony of the grand jury witnesses who testified against him and in ordering the nondisclosed material sealed. We find no error.

The jury could reasonably have found the following facts. For approximately eighteen years, the defendant was a member of the police department of the borough of Naugatuck. From 1982 until March 1985, he served as union steward of the department. As part of his duties, the defendant was involved in fundraising activities sponsored by the Naugatuck Police Union,

---

[1] "[General Statutes] Sec. 53a-156. PERJURY: CLASS D FELONY. (a) A person is guilty of perjury if, in any official proceeding, he intentionally, under oath, makes a false statement, swears, affirms or testifies falsely, to a material statement which he does not believe to be true."

including a music show featuring entertainer Bobby Rydell. Representing the union, the defendant worked in conjunction with Joseph Taglia, who was the sales manager for WRG Enterprises, the producer of the show. The defendant and Taglia opened a joint checking account for use in connection with the Rydell fundraising effort. On March 22, 1982, the defendant wrote out check number 115 in the amount of $192, made payable to cash. He and Taglia both signed the check, with Taglia entering the notation "mayor campaign donation" in the checkbook register for check number 115. The defendant and Taglia met with William Rado, Sr., the mayor of Naugatuck, on the same day, at which time the defendant gave the check to Rado. The check was cashed at the Elks Club where Rado was a member.

In 1985, during a grand jury investigation into alleged municipal corruption involving Rado, the defendant turned over the checkbook and cancelled checks relating to the Rydell show to Norman Hardacker, the new union steward, the day before Hardacker was to testify before the grand jury.

Thereafter, the defendant was summoned to testify before the grand jury. On June 13, 1985, the defendant was asked, "Do you know whether or not any payments were made to Mayor Rado for any show or fundraising activities put on by the police union?" The defendant replied, "No." Later, on July 1, 1985, the defendant testified that he had never discussed cash payments to Rado with anyone and that he had no knowledge of what happened to check number 115 after he wrote it. On the basis of his testimony given on June 13 and July 1, 1985, the defendant was arrested and charged with two counts of perjury. A jury found the defendant guilty on the first count and not guilty on the second count.

Prior to trial, the defendant moved for the disclosure of transcripts of the testimony of all the witnesses who had appeared before the grand jury. He also requested disclosure of any statements made by the witnesses to state agents, investigators and attorneys. The trial court, *Nigro, J.,* ordered production of relevant portions of the transcripts of the testimony of the grand jury witnesses the state intended to call as witnesses at trial. The state complied by providing excerpts of the transcripts.

On the first day of the trial, dissatisfied with what the state had produced, the defendant renewed his request for full disclosure of the grand jury testimony of all the witnesses the state intended to call. Alternatively, he moved, pursuant to Practice Book § 753, that the court conduct an in camera inspection of undisclosed portions of the transcript and order disclosure of any exculpatory evidence contained therein, including evidence that could be used for impeachment. The trial court, *Thim, J.,* ruled that a review of relevant transcripts and other statements would be made upon the defendant's request following each witness's testimony.

The state called Hardacker, Taglia, and Officer James Fortin of the Naugatuck police department as witnesses at trial. When they had finished testifying, the defendant moved for an in camera inspection of the transcripts of their grand jury testimony and of any police reports relating to them. After conducting a review of the designated material, the trial court ruled that, except for one paragraph of a police report containing information regarding Taglia, nothing contained therein had to be disclosed. The court ordered that the documents be marked for identification and sealed, not to be opened by anyone except a reviewing court unless

ordered otherwise. Defense counsel agreed to these procedures and took no exception to the trial court's rulings.

The defendant moved for judgment of acquittal at the close of the state's case and again at the close of his own case, arguing that the state had presented insufficient evidence to meet the requirements of the corroboration rule applicable to proof of the falsity element of perjury. The court denied these motions.

In his first claim of error, the defendant contends that there was insufficient evidence introduced on the element of falsity to support his conviction for perjury.[2] This claim is without merit.

Ordinarily, the test for determining whether the evidence is sufficient to support a conviction is whether the trier reasonably could have concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. *State* v. *Scielzo,* 190 Conn. 191, 196, 460 A.2d 951 (1983). "Each essential element of the crime charged must be established by proof beyond a reasonable doubt." Id. In reviewing the sufficiency of the evidence in a case involving a conviction for perjury, however, there is an additional inquiry: whether the evidence is sufficient to satisfy the requirements of the so-called "one-witness-plus-corroboration" rule. Under the "one-witness-plus-corroboration" rule, a perjury conviction cannot be based upon the testimony of

---

[2] The defendant urges us to renounce the "waiver rule" stated in *State* v. *Rutan,* 194 Conn. 438, 440, 479 A.2d 1209 (1984), and review the sufficiency of the evidence presented by the state as of the close of the state's case. This is not an appropriate case in which to change the waiver rule " 'because, even if the defendant's claim were properly here, he could not prevail.' *State* v. *Rutan,* [supra]; see *State* v. *Lizzi,* 199 Conn. 462, 464–65, 508 A.2d 16 (1986)." *State* v. *Simino,* 200 Conn. 113, 118 n.5, 509 A.2d 1039 (1986).

a single witness without corroborative evidence to establish the falsity of the statement. *State* v. *Sanchez,* 204 Conn. 472, 477, 528 A.2d 373 (1987); *State* v. *Campbell,* 93 Conn. 3, 12, 104 A.2d 653 (1918). " '[T]he corroborative evidence must be inconsistent with the innocence of the accused and must tend to show the perjury independently of the testimony which it is intended to corroborate.' " *State* v. *Sanchez,* supra, 482, quoting *United States* v. *Forrest,* 639 F.2d 1224, 1226 (5th Cir. 1981).

A review of the record reveals that there was sufficient evidence to satisfy the requirements of the rule. To prove the element of falsity, the state presented the testimony of Officer Fortin. Fortin testified that, in a conversation he had with the defendant in May, 1985, the defendant had told him that he had to pay Rado $100 to $200 every time he had a fundraising show. This testimony contradicted the defendant's grand jury assertion that he had no knowledge of whether any payments were made to Rado for any show or fundraising activities sponsored by the police union. To corroborate this evidence on the element of falsity, the state introduced independent evidence, in the form of testimony from other witnesses, that the defendant and Taglia had opened a joint checking account for use in connection with fundraising activities, that the defendant had given check number 115 to Rado, and that the check had been cashed at a club where Rado was a member. This evidence was sufficient to corroborate Fortin's testimony, which tended to establish that the defendant's grand jury testimony was false. The defendant's claim that there was insufficient evidence on the element of falsity therefore fails.

The defendant next contends that the trial court erred in failing to order the disclosure of the complete transcripts of the grand jury testimony of the witnesses

who testified against him, along with certain investigation reports. This claim has no merit.

The defendant's request for disclosure was made before trial and repeated at the commencement of trial. The decision of the trial court on a petition for disclosure of grand jury transcripts must be reviewed with reference to the statute that was applicable to the grand jury investigation in question. *In re Final Grand Jury Report Concerning the Torrington Police Department,* 197 Conn. 698, 713 n.10, 501 A.2d 377 (1985). The statute that was applicable to the transcripts subject to the defendant's requests for disclosure was General Statutes (Rev. to 1985) § 54-47. See *In re Grand Jury Investigation by Judge John M. Alexander,* 207 Conn. 98, 108, 540 A.2d 49 (1988).[3] General Statutes (Rev. to 1985) § 54-47 (g) gave the court the power to "direct whether, and to what extent, the report shall be made available to the public or interested parties . . . provided any person accused of crime as a result of the inquiry shall have access at all reasonable times to the transcript of *his own testimony* given by him in such inquiry." (Emphasis added.) A criminal defendant is not entitled to the transcripts of testimony of any and all grand jury witnesses on demand. "[T]he applicant seeking disclosure . . . bear[s] the burden of articulating and substantiating a basis for the desired access to grand jury transcripts . . . ." *In re Final Grand Jury Report Concerning the Torrington Police Department,* supra, 712. "The secrecy of an investigative grand jury proceeding is inviolate except if a court has ordered otherwise. A court may order otherwise if a

---

[3] Effective October 1, 1985, General Statutes (Rev. to 1985) § 54-47 was repealed and its provisions replaced by Public Acts 1985, No. 85-611, codified as General Statutes §§ 54-47a through 54-47h. Because the grand jury inquiry in issue in this case was ordered on December 20, 1984, General Statutes (Rev. to 1985) § 54-47 is the statute governing disclosure of transcripts from that investigation.

particularized need [is] shown." *State* v. *Waterman,* 7 Conn. App. 326, 346, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986); see also *In re Grand Jury Investigation by Judge John M. Alexander,* supra, 108; *In re Grand Jury Report Concerning the Torrington Police Department,* supra; *State* v. *Maldonado,* 193 Conn. 350, 363, 478 A.2d 581 (1984); *State* v. *Rado,* 14 Conn. App. 322, 331–32, 541 A.2d 124, cert. denied, 208 Conn. 813, 546 A.2d 282, cert. denied,      U.S.   , 109 S. Ct. 311, 102 L. Ed. 2d 330 (1988). In order to demonstrate a particularized need, "a petitioner . . . must make a showing that articulates the claim that, in the particular circumstances before the court, the benefits of disclosure outweigh the benefits of continued secrecy." *In re Final Grand Jury Report Concerning the Torrington Police Department,* supra, 714.

In making his pretrial request for disclosure of the grand jury transcripts, the defendant indicated only that he needed the transcripts to prepare for trial. " 'A defendant has no absolute right to inspect investigative grand jury testimony for the purpose of assisting him in preparation of a defense.' " *State* v. *Rado,* supra, 331, quoting *State* v. *Waterman,* supra, 345. The defendant's bald assertion that he needed the transcripts to prepare for trial does not amount to the requisite showing of particularized need.

At trial and in his appellate brief, the defendant relied on Practice Book §§ 741, 752 and 753[4] to support his

---

[4] "[Practice Book] Sec. 741.——INFORMATION AND MATERIALS DISCOVERABLE BY DEFENDANT AS OF RIGHT

"Upon a written motion made by a defendant within ten days after the entry of a plea, the prosecuting authority, within the time set by the judicial authority, shall disclose in writing the existence of and allow the defendant to inspect, copy, photograph and have reasonable tests made on any of the following relevant materials:

"(1) Exculpatory information or materials;

\* \* \*

"(3) Adequately identified books, tangible objects, papers, photographs, or documents which are within the possession, custody, or control of any

claim that his disclosure requests should have been granted. Practice Book § 752 provides that, after a witness called by the state has testified on direct examination at trial, "the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents . . . which statement relates to the sub-

state agency, and which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at the trial[.]

\* \* \*

"In addition to the foregoing, the defendant shall be entitled to disclosure of exculpatory materials in accordance with any applicable constitutional and statutory provisions."

"[Practice Book] Sec. 752.—— ——PRODUCTION FOLLOWING TESTIMONY

"After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

"[Practice Book] Sec. 753.—— ——DELIVERY AND EXCISION OF STATEMENTS

"If the entire contents of a statement requested under Sec. 752 relate to the subject matter of the testimony of the witness, the judicial authority shall order the statement to be delivered directly to the defendant or his counsel for his examination and use. If the prosecuting authority claims that any statement ordered to be produced under Sec. 751 contains matter which does not relate to the subject matter of the testimony of the witness, the judicial authority shall order the prosecuting authority to deliver such statement for the inspection of the judicial authority in camera. Upon such delivery, the judicial authority shall not disclose that portion of such statement which does not relate to the subject matter of the testimony of the witness. With such material excised or obliterated, the judicial authority shall then direct delivery of such statement to the defendant or his counsel for his use. If, pursuant to this procedure, any portion of such statement is withheld from the defendant or his counsel and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be sealed and preserved as an exhibit in the case, and, in the event that the defendant appeals, it shall be made available to the appellate court and, unless for good cause the trial court orders otherwise, to counsel for the parties for the purpose of determining the correctness of the ruling of the judicial authority."

ject matter about which the witness has testified." The trial court in this case ordered relevant portions of the witness' statements disclosed *before* trial. The state complied with that order. Those portions of the requested documents that the state did not disclose were ordered sealed, in accordance with Practice Book § 753, for appellate review. The decision of the trial court on a disclosure request is entitled to every reasonable presumption of correctness. *In re Grand Jury Report Concerning the Torrington Police Department,* supra; *State* v. *Rado,* supra, 332. We may not reverse the trial court's ruling unless an abuse of discretion is manifest or injustice appears to have been done. *In re Grand Jury Report Concerning the Torrington Police Department,* supra. Our review of the sealed documents reveals that the trial court, in limiting the defendant's access to certain portions of the documents, acted in compliance with applicable law and within the scope of its lawful discretion.

The defendant also claims that the trial court erred in sealing the undisclosed documents with orders that no one was to have access to them except a reviewing court, because it did not make the finding of "good cause" required by Practice Book § 753. This claim is not properly before us. Practice Book § 753 permits the defendant to move for access to sealed documents after filing an appeal. *State* v. *Cohane,* 193 Conn. 474, 494, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). The record does not disclose that the defendant made such a motion.

In conclusion, we agree with the trial court that there was sufficient evidence presented to the jury to independently corroborate the testimony of a witness and thus to prove the element of falsity, and that the trial court's rulings concerning disclosure, non-

disclosure and sealing of the grand jury transcripts and other reports were proper and in accordance with applicable law.

There is no error.

In this opinion the other judges concurred.