[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These two matters came before the court for trial on October 31, 2000. By agreement of the parties and with the concurrence of the court, both actions were consolidated and tried together. Connecticut Practice Book § 9-5. Both actions are appeals from decisions of the Zoning Board of Appeals of the Town of Montville to uphold the issuance of cease and desist orders to the named plaintiffs by the zoning enforcement officer. For reasons hereinafter stated, the decisions appealed are reversed and the matters are remanded to the Zoning Board of Appeals for rehearing.
Plaintiffs have appealed under the provisions of C.G.S. § 8-8(b) which provides in part that:
 "Any person aggrieved by any decision of a Board may take an appeal to the Superior Court.
To establish aggrievement required by statute, so as to be entitled to appeal a zoning board's decision, a party must allege facts which, if proven, would constitute aggrievement as a matter of law and prove the truth of those factual allegations. Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184 (1996). In this action, plaintiffs have failed to allege aggrievement in either complaint. It was stipulated and agreed, however, that plaintiffs were the subject of the cease and desist orders issued by the zoning enforcement officer and that they appealed the issuance of such orders to the Zoning Board of Appeals. It was further agreed, and the record indicates, that the plaintiffs initiated this CT Page 14546 action from the decision of the Zoning Board of Appeals. Accordingly, it is found that the plaintiffs are aggrieved parties and have standing to prosecute this appeal.
The record indicates that on October 19, 1999, the zoning enforcement officer of the Town of Montville issued to the plaintiffs, as owners of property at 170 Oxoboxo Brook, a/k/a Oxoboxo Dam Road, Montville, (Docket No. CV00-0119394) a cease and desist order to discontinue the following violations of §§ 6.2 and 6.3.10 of the Zoning Regulations.
 1. Manufacturing of commercial concrete blocks in a residential zone in violation of § 6.2 of the Montville Zoning Regulations.
 2. Operating a construction company in a residential zone in violation of § 6.2 of the Montville Zoning Regulations.
 3. Operating a trucking company in a residential zone in violation of § 6.2 of the Montville Zoning Regulations.
 4. Operating a sand and gravel company without a special permit in a residential zone in violation of §§ 6.2 and 6.3.10 of the Montville Zoning Regulations and in violation of a variance granted by the Zoning Board of Appeals on January 12, 1979.
 5. Operating a ready-mix company by storing cement transport trucks on property in a residential zone in violation of § 6.2 of the Montville Zoning Regulations.
On the same date, the zoning enforcement officer issued to plaintiffs, as owners of property at 143 Oxoboxo Cross Road, Oakdale, Connecticut, (Docket No. CV00-0119333) a cease and desist order to discontinue the following activities which it is claimed were in violation of §§ 4.6.2, 4.6.2.3(2) and 6.2.10 of the Montville Zoning Regulations:
 1. Operation of a construction company in an area exclusively zoned residential and in an owner-occupied structure without a home occupation permit as required by § 4.6.2 of the Montville Zoning Regulations.
 2. Operation of a trucking company in an area CT Page 14547 exclusively zoned residential and in an owner-occupied structure without a home occupation permit as required by § 4.6.2 of the Montville Zoning Regulations.
 3. Operation of a sand and gravel company in an area exclusively zoned residential and in an owner-occupied structure without a home occupation permit as required by § 4.6.2 of the Montville Zoning Regulations.
 4. Operation of a concrete ready-mix company in an area exclusively zoned residential and in an owner-occupied structure without a home occupation permit as required by § 4.6.2 of the Montville Zoning Regulations.
 5. Operation of more than one home occupation in an area exclusively zoned residential in an owner-occupied structure in violation of § 4.6.2.3(2) of the Montville Zoning Regulations.
On November 8, 1999, plaintiffs appealed to the Zoning Board of Appeals the action of the zoning enforcement officer in issuing the cease and desist orders. The Zoning Board of Appeals held a public hearing on plaintiffs' appeals on December 1, 1999. At this meeting, the Zoning Board of Appeals voted unanimously to uphold the decision of the zoning enforcement officer to issue both cease and desist orders. Within the time allowed by statute, plaintiffs have appealed the decision of the Zoning Board of Appeals.
In considering the issues raised in this appeal, the scope of judicial review is limited. Horn v. Zoning Board of Appeals, 18 Conn. App. 674,676 (1989). The authority of the court is limited by § 8-8 to a review of the proceedings before the Zoning Board of Appeals. The function of the court in such a review is to determine whether the Board acted fairly or on valid reasons with the proper motives. Willard v.Zoning Board of Appeals, 152 Conn. 247, 248-49 (1964). The court is limited to determining whether the record reasonably supports the conclusions reached by the Board. Burnham v. Planning and ZoningCommission, 189 Conn. 261, 265 (1983). The court cannot substitute its discretion for the liberal discretion confirmed by the legislature on the Zoning Board of Appeals. The court is limited to granting relief only when it can be shown that the Board acted arbitrarily or illegally and consequently has abused its authority. Gordon v. Zoning Board,145 Conn. 597, 604 (1958). The burden rests with the plaintiff to prove CT Page 14548 the impropriety of the Board's actions. Burnham, supra, 189 Conn. 266.
It is not the function of the court to rehear the matter or question wisdom of the defendant, Zoning Board of Appeals, in taking the action which it did. The court is limited to determining whether or not the Zoning Board of Appeals' action can be supported under the law.
The Zoning Board of Appeals is authorized to decide appeals from the decisions and rulings of the zoning enforcement officer under the provisions of C.G.S. §§ 8-6(1) and § 22.1 of the local regulations. In deciding such appeals concerning the interpretation of the zoning regulations as applied to a particular piece of property, the Zoning Board of Appeals acts in a quasi judicial capacity. The Zoning Board of Appeals has the authority to interpret the Town's zoning regulations and decide whether they apply in a given situation. Stern v.Zoning Board of Appeals, 140 Conn. 241, 245 (1953). On appeal, the court is required to decide whether the Board properly interpreted the regulations and applied them to the facts of the case. Danseyar v. ZoningBoard of Appeals, 164 Conn. 325, 327 (1 973). In reviewing the Zoning Board of Appeals' decision, the credibility of witnesses and the determination of factual issues are matters within the province of the agency. Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732
(1988).
Plaintiffs have raised a number of issues, most of which are applicable to both files. The first issue raised is a question of jurisdiction and is dispositive of the appeal.
Plaintiffs claim that notice of the public hearing on both appeals was defective. Compliance with prescribed notice requirements is a prerequisite to a valid action by a Zoning Board of Appeals and failure to give proper notice to constitutes a jurisdictional defect. Wright v.Zoning Board of Appeals, 174 Conn. 488, 491 (1978). Failure to follow the applicable notice requirements leaves the Board without jurisdiction and its actions are void. Maher v. Town Planning and Zoning Commission,154 Conn. 420 (1967). Notice requirements for the public hearing were set forth in C.G.S. § 8-7, which provides in pertinent part as follows:
 Such board shall, within the period of time permitted under section 8-7d, hear such appeal and give due notice thereof to the parties. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days before such hearing.
CT Page 14549 The zoning regulations and the rules and procedures for the Montville Board of Appeals require no additional notice to be given.
The record indicates and the parties agree that publication of the required notice was made in accordance with the statute twice in a newspaper having substantial circulation in the municipality. The record also indicates, and the parties agree, that no notice of the public hearing was given to plaintiffs. Not having received notice of the public hearing, plaintiffs failed to appear at the hearing. The absence of the petitioners at the public hearing was commented on and it was decided to proceed without them.
It is plaintiffs' contention that failure by the Zoning Board of Appeals to give them notice of the public hearing constitutes a jurisdictional defect which invalidates the action of the Board.
C.G.S. § 8-7 requires that the Board give due notice to of the public hearing to the parties. It is axiomatic that courts are required to read a statute in light of its purpose. State v. Rado, 14 Conn. App. 322,329 (1988). The reason for the above quoted language of C.G.S. § 8-7
is to advise all affected parties of the opportunity to be heard and be apprised of the relief sought at a public hearing. Slagle v. Zoning Boardof Appeals, 144 Conn. 690, 693 (1957). The statute specifically requires the Zoning Board of Appeals to give due notice of the public hearing to the parties. The language setting forth this requirement is separate and apart from the language requiring publication. No words in a statute are to be treated as superfluous or insignificant. Kulis v. Moll,172 Conn. 104, 111 (1976). Certainly, plaintiffs, owners of the properties and petitioners before the Board, would have to be considered parties to whom notice would have to be given.
The situation here is similar to the situation in Bencivenga v. ZoningBoard of Appeals, 2 Conn. App. 384, 387 (1984) in which the court stated, "it is axiomatic that due notice to interested parties of a hearing to be held by a Zoning Board is necessary to its jurisdiction. C.C.S. § 8-7 Cavallaro v. Durham, 190 Conn. 746, 747, 462 A.2d 1042
(1938). The plaintiff, as the owner of the property which was the subject of the hearing, was an interested party. This record is bereft of any notice of the hearing given by the Board to the plaintiff."
It must then be concluded that plaintiffs were parties within the meaning of § 8-7 and entitled to notice under the provisions of that statute. The statutory requirement was for personal notice. Our Supreme Court has distinguished the statutorily required notice to the general public by publication in a newspaper having substantial circulation in the municipality from the notice to specific individuals. The court has long CT Page 14550 held that failure to give newspaper notice is a subject matter jurisdictional defect which cannot be waived or conferred by consent. The court has also held that failure to give personal notice to a specific individual is not a jurisdictional defect. Lack of personal notice may be waived by a party entitled to such notice. Lauer v. Zoning Commission,220 Conn. 455 (1991). Here, where no notice was given and the plaintiff did not attend the hearing there was no waiver. The effect of the Board's failure to give notice to the plaintiffs was to render the action taken at the public hearing voidable. Since no notice of the public hearing was given to plaintiffs and they did not appear at the public hearing to present their position, it must be concluded that the action of the Zoning Board of Appeals in upholding the zoning enforcement officer's decision to issue the cease and desist orders was void.
The defendant, Board, has taken the position that notice of the public hearing was not defective publication of the legal notice being sufficient compliance with the statute. Based upon a Superior Court decision, Professor Tondro appears to agree with this argument that "even the applicant need not receive personal notice of the public hearing, as long as the official notice of the hearing was published in the newspaper." Section 7, page 399, Tondro, Connecticut Land Use Regulations 2nd Ed. Although this conclusion is at variance with the plain language of § 8-7 requiring notice to the parties, Tondro adds, "the [Superior Court] decision seems to violate the Constitutional due process requirement that notice be given to those with readily identifiable interests by means designated to best assure they receive the notice." Id. n. 37.
Strict adherence to the notice requirements of § 8-7 and the requirements of constitutional due process are particularly important in this case. The proceedings here were triggered by cease and desist orders, the validity of which plaintiffs appealed to the Zoning Board of Appeals. Continuing violations of the Zoning Regulations and the cease and desist orders subject plaintiffs to substantial penalties under the provisions of C.G.S. § 8-12. At the public hearing, a copy of this statute was presented to the Board by those supporting the cease and desist orders. It is prudent then to consider whether or not constitutional due process has been afforded to plaintiffs in this case.
Our Supreme Court has held that due process rights attach whenever the government seeks to deprive a person of life, liberty or property. Statev. Angel C., 245 Conn. 93, 104 (1998). Our Supreme Court has also stated that "[o]ur due process inquiry takes the form of a two part analysis. [[W]e must determine whether [the claimant] was deprived of a protected interest, and, if so, what process was his due. "(Internal quotations marks omitted.) Worsham v. Greifenberger, 242 Conn. 432, 438 (1997). CT Page 14551
The first task, therefore, is to determine whether the plaintiff's life, liberty or property rights are implicated. In this instance, the zoning enforcement officer issued two cease and desist orders to the plaintiffs under the town of Montville's zoning regulations. These regulations prohibit some of the uses to which the owners may put their land. In interpreting zoning regulations, our Appellate Court has held that "[z]oning regulations, so far as they reasonably promote the public health, safety and welfare, are constitutional even though their effect may be to limit the exercise of private property rights." Gangemi v.Zoning Board of Appeals, 54 Conn. App. 559, 570 cert. granted,251 Conn. 911 (1999). Therefore, although the underlying cease and desist orders may be perfectly valid and constitutional, the existence of the order affects the plaintiffs' property rights. For this reason, some amount of procedural due process was due to the plaintiff prior to the continued enforcement of the cease and desist order under the phrase "due notice thereof to the parties."
Once it has been determined that due process rights attach to a proceeding, the court must determine what type of procedural due process rights were due to the appellants. Worsham v. Greifenberger, supra,242 Conn. 438. In this instance, because there was constructive notice to the plaintiff through newspaper publication, it must be determined if this notice was sufficient to meet the requirements of procedural due process, or if the Board was required to give written notice by mail of the hearing date.
"Due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471,481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Accordingly, whether the notice given in this instance is constitutionally sufficient to guarantee the plaintiff's due process rights requires an analysis of the interest that is affected. Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893,47 L.Ed.2d 18 (1976). In Tedesco v. Stamford, 222 Conn. 233 (1992), the Connecticut Supreme Court stated that the "specific dictates of due process generally [require] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." Id., 243 quoting Mathews v. Eldridge,424 U.S. 319, 335, 96S.Ct. 893, 47 L.Ed.2d 18 (1976).
The private interest affected by the action of the board is CT Page 14552 substantial. In this instance, the plaintiffs are subject to a $250 a day fine and other civil penalties if they violate the cease and desist order. These substantial fines significantly affect their free use of the properties. Connecticut Natural Gas Corporation v. Miller, 239 Conn. 313,320 (1996) (acknowledging that a private interest is affected by the appointment of a receiver in bankruptcy); Harkless v. Rowe, 232 Conn. 599
(1995) (acknowledging that a private interest require the government to give a hearing prior to the suspension of general assistance benefits.)
The risk of erroneous deprivation through the notice procedures used is also high. The plaintiffs claim that they were not notified of his hearing date, and therefore did not appear to prosecute their appeals. The United States Supreme Court has stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, 314,70 S.Ct. 652,94 L.Ed. 865 (1950). The court continued on to state that the "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." Id. 314.
In this instance, the sole use of notice by publication deprived the plaintiff of the "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, (which) is a principle basis to our society." Joint Anti-Fascist Comm. v. Mc Grath, 341 U.S. 123, 168,71 S.Ct. 624, 95 L.Ed. 817 (1951). Although there was notice by publication, the published notice was insufficiently tailored to ensure that the plaintiff would receive actual notice of the date of their hearing and therefore, the board was required to send the appellants written notice by mail. See Mullane v. Central Hanover Bank Trust Co., supra, 339 U.S. 306 (published notice of settling a trust insufficiently tailored to reach known beneficiaries).
The last factor to consider is the governmental interest involved. In this instance, the government has a strong interest in enforcing zoning regulations, but there is little or no added burden in requiring the Board to mail written notice to the applicants of the hearing date.Greene v. Lindsey, 456 U.S. 444, 455-56, 102 S.Ct. 1874, 72 L.Ed.2d 249
(1982). Since the government, here the Zoning Board of Appeals, is required by General Statutes § 8-7 to give a hearing to a person cited with a cease and desist order upon application, the only real governmental interest at stake is the administrative cost of sending out a notice by mail. On balance, this factor does not outweigh the cost to CT Page 14553 the appellant of losing the opportunity to have a fair hearing conducted on their appeal in front of the Zoning Board of Appeals because of faulty notice.
After this analysis of the factors, the interest weighs in favor of giving the plaintiff written notice of the hearing. For this reason this case must be remanded with instructions to the Zoning Board of Appeals to hold a new hearing and give proper notice to the plaintiffs.
Accordingly, judgment is rendered in favor of the plaintiffs the decisions appealed from are reversed and the cases are remanded to the Zoning Board of Appeals for rehearing.
Joseph J. Purtill, Judge Trial Referee